**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com
       jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA NACARINO, SUSAN SYLVESTER, and MICHAEL SONNENSCHEIN, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC.,<br><br>         Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br>(1) UNFAIR COMPETITION<br>(2) CONVERSION<br>(3) FALSE ADVERTISING<br>(4) VIOLATION OF CALIFORNIA'S<br>    CONSUMERS LEGAL REMEDIES ACT<br>(5) UNJUST ENRICHMENT /<br>    RESTITUTION<br>(6) NEGLIGENT MISREPRESENTATION<br>(7) FRAUD<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Elena Nacarino, Susan Sylvester, and Michael Sonnenschein (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Amazon.com, Inc. ("Amazon" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## INTRODUCTION

1.      This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription plans for Amazon-branded products and services that are available exclusively to consumers who enroll in Defendant's auto-renewal membership programs (collectively, the "Amazon Subscriptions," enumerated below) through its website at https://www.amazon.com/ (the "Amazon Website") and/or its mobile application(s) and/or set-top device(s) (the "Amazon Apps") (collectively with Amazon Website, the "Amazon Platform").  Defendant is the world's largest online retailer and a prominent provider of cloud and web-based products and services, including the Amazon Subscriptions.  Relevant to Plaintiffs' allegations, when consumers sign up for the Amazon Subscriptions, Defendant actually enrolls consumers in a program that automatically renews the Amazon Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method").  In doing so, Defendant fails to provide the requisite disclosures and authorizations required to be made to California consumers under California's Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code §§ 17600, *et seq.*

2.      Through the Amazon Platform, Defendant markets, advertises, and sells paid memberships to the Amazon Subscriptions, which include, without limitation, the following automatic renewal programs: Amazon Prime[1], Amazon Prime Video[2], Amazon Prime Video

---

[1] Amazon Prime (or "Prime") is a subscription-based automatic renewal program that provides paying subscribers in the United States with benefits otherwise unavailable to other Amazon customers without a paid Prime subscription, including Amazon Prime Video.  Currently, a standard Prime subscription costs $12.99 per month or $119 per year.

[2] Amazon Prime Video (or "Prime Video"), which is offered as a standalone subscription or as part of the Prime subscription, primarily distributes films and television series produced by Amazon

1   Channels[3], Amazon Music Unlimited[4], Amazon Prime Book Box[5], Amazon Kids+[6], Kindle

2   Unlimited[7], Audible[8], and Amazon Photos[9].

3          3.          Consumers can sign up for Defendant's Amazon Subscriptions through the Amazon

4   Website and, in some cases, the Amazon App(s).  To do so, customers provide Defendant with

5   their billing information and Defendant then automatically charges its customers' Payment Method

6   as payments are due, typically on a monthly basis.  Defendant is able to unilaterally charge its

7   customers renewal fees without their consent, as it is in possession of its customers' Payment

8   Information.  Thus, Defendant has made the deliberate decision to charge Plaintiffs and other

9   similarly situated customers on a monthly basis, absent their consent under the ARL, relying on

---

Studios or licensed to Amazon, as Amazon Originals, with the service also hosting content from other providers, content add-ons, live sporting events, and video rental and purchasing services.  As a standalone subscription, Prime Video automatically renews at a standard rate of $8.99 per month.

[3] Amazon Prime Video Channels (or "Prime Video Channels") are optional content add-on subscriptions available, for an additional monthly fee, to consumers with a pre-existing Prime or Prime Video subscription.  Prime Video Channels subscriptions provide on-demand or live streaming access to TV shows, movies, and other video content from over 100 premium third-party networks and other streaming entertainment channels, such as Epix, Starz, Discovery+, Cinemax, Curiosity Stream, Tastemade, Showtime, BET+, Paramount+, CBS All Access, Cinemax, and more.  Prime Video Channel subscriptions renew on a monthly basis at various rates ranging from $3 to $29 per month, depending on the channel.

[4] Amazon Music Unlimited (or "Music Unlimited") is a premium music subscription service featuring "75 million songs and thousands of expert-programmed playlists and stations." https://www.amazon.com/b?ie=UTF8&node=15730321011.  Prime members can enroll in a Music Unlimited subscription at the renewal rate of $7.99 per month or $79 per year.  Non-Prime customers pay $9.99 per month.  *Id.*

[5] Amazon Prime Book Box is a subscription program available, for an additional monthly fee, exclusively to Amazon Prime members, which delivers a box of children's books to customers on monthly intervals.

[6] Amazon Kids+ (formerly "FreeTime Unlimited") is a paid subscription that provides kids aged 3 to 12 years access to age-appropriate books, movies, and TV shows.

[7] Kindle Unlimited is a subscription-based service that provides paying subscribers access to an unlimited quantity of eBooks and audiobooks, and up to three magazine subscriptions, which the subscriber may download and retain.

[8] Audible is a subscription-based automatic renewal program that allows paid subscribers to access and stream audiobooks or other forms of spoken word content from Defendant's expansive "Plus Catalog" (*i.e.*, the library of content available to paid Audible subscribers).  Audible is offered in three different tiers: Audible Plus, Audible Premium Plus, and Audible Premium Plus Annual.

[9] Amazon Photos is a secure online subscription storage service for photos and videos.  While *all* Amazon customers get 5GB of storage, and Prime subscribers get unlimited photo storage and 5GB of video storage, Defendant also offers a range of extra storage plans at an additional monthly or annual fee to Prime subscribers who want an Amazon Photos membership with the capacity to store more than 5GB of video.

---

consumer confusion and inertia to retain customers, combat consumer churn, and bolster its revenues.

4.     Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer's purchase; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; and (c) provide an acknowledgment identifying an easy and efficient mechanism for consumers to cancel their subscriptions.  Those purchasing the Amazon Subscriptions do so either by choosing a free trial that automatically renews with a paid subscription at the end of the trial period, or a paid monthly subscription (at either the full standard recurring rate that Defendant ordinarily charges or at a promotional or discounted rate that remains static for a limited period of time and then automatically renews to the full standard rate).  As will be discussed below, the enrollment process for an Amazon Subscription on the Amazon Website and App uniformly violates each of the core requirements of the ARL.  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Amazon Subscriptions.

5.     Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b).  Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b).  As a result, all goods, wares, merchandise, or products sent to Plaintiffs and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" under the ARL. Cal. Bus. & Prof. Code § 17603.

6.     For the foregoing reasons, Plaintiffs bring this action individually and on behalf of

all California purchasers of any of Defendant's Amazon Subscriptions from any Amazon Platform who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their Amazon Subscriptions. Based on Defendant's unlawful conduct, Plaintiffs seek damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (2) conversion; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (5) unjust enrichment / restitution; (6) negligent misrepresentation; and (7) fraud.

## THE PARTIES

7.      Plaintiff Elena Nacarino is a citizen of California, residing in San Francisco, California. Ms. Nacarino signed up for a free trial of Defendant's monthly Amazon Prime subscription from Defendant's website while in California in or around approximately late 2019 or early 2020. During the enrollment process but before finally consenting to Defendant's subscription offering, thereby completing the checkout process, Ms. Nacarino provided her credit card billing information (her "Payment Method") directly to Defendant. At the time Ms. Nacarino enrolled in her Amazon Subscription program, Defendant did not disclose to Ms. Nacarino all required automatic renewal offer terms associated with the subscription program or obtain Ms. Nacarino's affirmative consent to those terms. For instance, at the time of enrollment, Ms. Nacarino was not aware that, upon the expiration of Ms. Nacarino's free trial subscription, Defendant would automatically convert her free trial into a paid, automatically renewing subscription. Nor did Defendant adequately disclose the length of Ms. Nacarino's free trial or when the first charge would occur. Further, after Ms. Nacarino completed her initial order, Defendant sent Ms. Nacarino an email receipt for her purchase of an Amazon Subscription (the "Acknowledgment Email"). However, the Acknowledgment Email, too, failed to provide Ms. Nacarino with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Nacarino's Amazon Subscription in a manner capable of being retained by her. Ms. Nacarino did

1    not receive any other acknowledgment that contained the required information.  As a result, Ms.

2    Nacarino was not placed on notice of several material terms associated with her Amazon

3    Subscription.  In particular, Ms. Nacarino was not made aware of the fact that her Amazon

4    Subscription would automatically renew after the initial free trial period, of the length of the free

5    trial period, or of when the first charge would occur, and nor was she apprised of the cancellation

6    policy associated with her Amazon Subscription, the most crucial aspects of which were missing

7    from the Checkout Page and Acknowledgment Email.  In any case, shortly after Ms. Nacarino first

8    signed up for her free trial Amazon Subscription, but prior to the end of the free trial period, Ms.

9    Nacarino attempted to cancel her Amazon Subscription through the Amazon Website in order to

10   avoid incurring any future charges in connection with Amazon Prime.  However, approximately

11   one month later, Ms. Nacarino learned upon review of her billing statements and banking history

12   that, notwithstanding her attempt to cancel her free trial Amazon Subscription the previous month,

13   Defendant automatically renewed Ms. Nacarino's Amazon Subscription upon the end expiration of

14   the free trial period and, without Ms. Nacarino's affirmative consent, charged Ms. Nacarino's

15   Payment Method in the full standard monthly rate associated with her Amazon Subscription.

16   Thus, Ms. Nacarino's attempt at cancellation one month earlier was utterly ineffective.

17   Immediately after seeing Defendant's charge to her Payment Method, Ms. Nacarino again

18   attempted to cancel her Amazon Subscription, which she struggled to do due to Defendant's

19   obscured, confusing, and time consuming cancellation policy.  Specifically, Ms. Nacarino called to

20   notify Defendant that she did not authorize – and to request a refund of – the subscription renewal

21   charges.  However, Defendant denied Ms. Nacarino's refund request and refused to cancel her

22   Amazon Subscription.  Ultimately, Ms. Nacarino was only able to affect cancellation, and thereby

23   stop Defendant from automatically charging her Payment Method, by cancelling her credit card

24   through her bank.  Defendant's missing and/or incomplete disclosures on the Checkout Page and

25   in the Acknowledgment Email, its failure to obtain Ms. Nacarino's affirmative consent before

26   charging her Payment Method on a recurring basis, and its subsequent refusal to issue a refund of

27   those unauthorized charges, are contrary to the ARL, which deems products provided in violation

28   of the statute to be a gift to consumers.  See Cal. Bus. & Prof. Code § 17603.  Had Defendant

complied with the ARL, Ms. Nacarino would have been able to read and review the auto renewal terms prior to purchase, and she would have not subscribed to Amazon Prime or she would have cancelled her Amazon Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period and/or any subsequent renewal term.  As a direct result of Defendant's violations of the ARL, Ms. Nacarino suffered economic injury.

8.   Plaintiff Susan Sylvester is a citizen of California, residing in Elk Grove, California.  In or around 2019, Ms. Sylvester purchased an Amazon Kindle Paperwhite Reader (the "Kindle Device"), which included a three-month free trial to Defendant's Kindle Unlimited subscription as a gift with purchase, from Defendant's website while in California.  During the process of purchasing her Kindle Device and/or enrolling in her Kindle Unlimited subscription, but before finally unwittingly consenting to Defendant's subscription offering and thereby completing the checkout process, Ms. Sylvester provided her credit card billing information (her "Payment Method") directly to Defendant.  At the time Ms. Sylvester purchased her Kindle device and thereby enrolled in her Amazon Subscription program, Defendant did not disclose to Ms. Sylvester all required automatic renewal offer terms associated with the subscription program or obtain Ms. Sylvester's affirmative consent to those terms.  For instance, at the time of enrollment, Ms. Sylvester was not aware that, upon the expiration of Ms. Sylvester's free trial subscription, Defendant would automatically convert her free trial into a paid, automatically renewing subscription.  Nor did Defendant adequately disclose the length of Ms. Sylvester's free trial or when the first charge would occur.  Further, after Ms. Sylvester completed her initial order, Defendant sent Ms. Sylvester an email receipt for her purchase of an Amazon Subscription (the "Acknowledgment Email").  However, the Acknowledgment Email, too, failed to provide Ms. Sylvester with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Sylvester's Amazon Subscription in a manner capable of being retained by her.  Ms. Sylvester did not receive any other acknowledgment that contained the required information.  As a result, Ms. Sylvester was not placed on notice of several material terms associated with her Amazon Subscription.  In particular, Ms. Sylvester was not made aware of the fact that her Amazon

Subscription would automatically renew after the initial free trial period, of the length of the free trial period, or of when the first charge would occur, and nor was she apprised of the cancellation policy associated with her Amazon Subscription, the most crucial aspects of which were missing from the Checkout Page and Acknowledgment Email.  In any case, shortly after Ms. Sylvester first noticed that her supposed free trial Amazon Subscription was not, in fact, free, Ms. Sylvester attempted to cancel her Amazon Subscription by calling Amazon's Customer Service phone line in order to avoid incurring any future charges in connection with Amazon Prime.  However, approximately one year later, Ms. Sylvester learned upon review of her billing statements and banking history that, notwithstanding her attempt to cancel her free trial Amazon Subscription the previous year, Defendant automatically renewed Ms. Sylvester's Amazon Subscription upon the end expiration of the free trial period and, without Ms. Sylvester's affirmative consent, charged Ms. Sylvester's Payment Method in the full standard monthly rate associated with her Amazon Subscription.  Thus, Ms. Sylvester's attempt at cancellation one year earlier was utterly ineffective.  Immediately after seeing Defendant's charges to her Payment Method, Ms. Sylvester again attempted to cancel her Amazon Subscription in August 2020, which she struggled to do due to Defendant's obscured, confusing, and time-consuming cancellation policy.  Specifically, Ms. Sylvester again called to notify Defendant that she did not authorize the continued subscription renewal charges.  Yet again, Ms. Sylvester's call with Defendant's Customer Service team was ineffective.  Ms. Sylvester continued to be charged until January 2022, at which point she called Defendant again to request cancellation and a refund of the 25 months of unauthorized charges to her Payment Method.  Ultimately, Ms. Sylvester was only able to affect cancellation, and thereby stop Defendant from automatically charging her Payment Method, by attempting to cancel her subscription this third time, after she had been charged 25 times without her consent.  Defendant's missing and/or incomplete disclosures on the Checkout Page and in the Acknowledgment Email, its failure to obtain Ms. Sylvester's affirmative consent before charging her Payment Method on a recurring basis, and its subsequent refusal to issue an adequate refund of those unauthorized charges, are contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.  Had Defendant complied with the ARL,

Ms. Sylvester would have been able to read and review the auto renewal terms prior to purchase, and she would have not unintentionally subscribed to Kindle Unlimited or she would have cancelled her Amazon Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period and/or any subsequent renewal term. As a direct result of Defendant's violations of the ARL, Ms. Sylvester suffered economic injury.

9.      Plaintiff Michael Sonnenschein is a citizen of California, residing in Los Angeles, California. At some point since 2017, Mr. Sonnenschein signed up for free trials of Defendant's add-on monthly Music Unlimited and Prime Video Channels subscriptions (collectively, the "Amazon Add-On Subscriptions") from Defendant's website while in California. During the enrollment process but before finally consenting to Defendant's subscription offerings, thereby completing the checkout process, Mr. Sonnenschein provided his credit card billing information (his "Payment Method") directly to Defendant. At the time Mr. Sonnenschein enrolled in his Amazon Add-On Subscriptions programs, Defendant did not disclose to Mr. Sonnenschein all required automatic renewal offer terms associated with the subscription programs or obtain Mr. Sonnenschein's affirmative consent to those terms. For instance, at the time of enrollment, Mr. Sonnenschein was not aware that, upon the expiration of Mr. Sonnenschein's free trial subscriptions, Defendant would automatically convert his free trials into paid, automatically renewing subscriptions. Nor did Defendant adequately disclose the length of Mr. Sonnenschein's free trials or when the first charges would occur. Further, after Mr. Sonnenschein completed his initial orders, Defendant sent Mr. Sonnenschein email receipts for his purchase of the Amazon Subscriptions (the "Acknowledgment Emails"). However, the Acknowledgment Emails, too, failed to provide Mr. Sonnenschein with the complete automatic renewal terms that applied to Defendant's offers, a description of Defendant's full cancellation policies, or information regarding how to cancel Mr. Sonnenschein's Amazon Add-On Subscriptions in a manner capable of being retained by him. Mr. Sonnenschein did not receive any other acknowledgment that contained the required information. As a result, Mr. Sonnenschein was not placed on notice of several material terms associated with his Amazon Add-On Subscriptions. In particular, Mr. Sonnenschein was not made aware of the fact that his Amazon Add-On Subscriptions would

automatically renew after the initial free trial periods, of the length of the free trial periods, or of when the first charges would occur, and nor was he apprised of the cancellation policies associated with his Amazon Add-On Subscriptions, the most crucial aspects of which were missing from the Checkout Pages and Acknowledgment Emails.  In any case, shortly after Mr. Sonnenschein first signed up for his free trial Amazon Add-On Subscriptions, Mr. Sonnenschein learned upon reviewing his billing statements and banking history that, notwithstanding the confusing terms of his Amazon Add-On Subscriptions, Defendant automatically renewed Mr. Sonnenschein's Amazon Add-On Subscriptions upon the end expiration of the free trial periods and, without Mr. Sonnenschein's affirmative consent, charged Mr. Sonnenschein's Payment Method in the full standard monthly rates associated with his Amazon Subscriptions.  After this discovery, Mr. Sonnenschein cancelled his Amazon Add-On Subscriptions through the Amazon Website in order to avoid incurring any future charges in connection with Music Unlimited and Prime Video Channels.  Further, Mr. Sonnenschein notified Defendant that he did not authorize – and to request a refund of – the subscription renewal charges.  However, Defendant denied Mr. Sonnenschein's refund request.  Defendant's missing and/or incomplete disclosures on the Checkout Pages and in the Acknowledgment Emails, its failure to obtain Mr. Sonnenschein's affirmative consent before charging his Payment Method on a recurring basis, and its subsequent refusal to issue a refund of those unauthorized charges, are contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.  Had Defendant complied with the ARL, Mr. Sonnenschein would have been able to read and review the auto renewal terms prior to purchase, and he would have not subscribed to Music Unlimited or Prime Video Channels, or he would have cancelled his Amazon Add-On Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription periods and/or any subsequent renewal terms.  As a direct result of Defendant's violations of the ARL, Mr. Sonnenschein suffered economic injury.

10.     Defendant Amazon.com, Inc. ("Amazon" or "Defendant") is a Delaware corporation with its corporate headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.  Amazon is the world's largest online retailer and a prominent provide of cloud and web-based products and services.  In fact, Amazon "dominate[s] e-commerce

sales" and "receive[s] more than one-quarter of U.S. e-commerce sales dollars for every category other than auto/parts."[10]  Relevant here, Defendant offers access to certain exclusive Amazon content, products, and/or services on a contract or fee basis to customers who enroll in the automatically renewing Amazon Subscriptions.  Defendant wholly owns and operates the Amazon Subscriptions, which it markets to consumers through the Amazon Website and App(s) (collectively, the "Amazon Platform").  Defendant is responsible for the promotion, advertisement, and/or marketing of the Amazon Subscriptions, and it owns and operates the Amazon Platform. Defendant sells – and, at all times during the Class Period, sold – the Amazon Subscriptions in California and has done business throughout California and the United States.  In connection with the Amazon Subscriptions, Defendant made automatic renewal offers to consumers in California and throughout the United States via the Amazon Platform during the Class Period.

11.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of a state different from Defendant.

13.     This Court has personal jurisdiction over the parties because Plaintiffs reside in California and submit to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and/or intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its products and/or services to

---

[10] Chain Store Age, *The top 10 U.S. retail e-commerce companies are…* (May 3, 2021), https://chainstoreage.com/top-10-us-retail-e-commerce-companies-are.

1 residents within this District and throughout California.  Additionally, Plaintiffs purchased their

2 Amazon Subscriptions from Defendant while in California.

3       14.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because

4 a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

5 District.  Also, Plaintiff Nacarino resides in this District and purchased Defendant's Amazon

6 Subscription in this District.  Moreover, Defendant systematically conducts business in this

7 District and throughout the State of California, and it distributed, advertised, and sold the Amazon

8 Subscriptions to Plaintiffs and Class Members in this State and District.

9 **FACTUAL BACKGROUND**

10     **A.**      **Background On The Subscription e-Commerce Industry**

11       15.     The e-commerce subscription model is a business model in which retailers provide

12 ongoing goods or services "in exchange for regular payments from the customer."[11]  Subscription

13 e-commerce services target a wide range of customers and cater to a variety of specific interests.

14 According to an October 2020 report by Juniper Research[12], "multiservice subscriptions, that

15 provide several services for a single cost, … will be led by offerings from tech conglomerates, like

16 Amazon's Prime service[.]"[13]  Given the prevalence of online and e-commerce retailers,

17 subscription e-commerce has grown rapidly in popularity in recent years.  Indeed, the

18 "subscription economy has grown more than 400% over the last 8.5 years as consumers have

19 demonstrated a growing preference for access to subscription services[.]"[14]  Analysts at UBS

20 predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from

21

22 [11] Core DNA, *How to Run an eCommerce Subscription Service: The Ultimate Guide* (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

23 [12] Juniper Research, one of the leading analyst firms in the mobile and digital tech sector, specializes in identifying and appraising new high growth market sectors within the digital

24 ecosystem and provides research and analytical services to the global hi-tech communications sector, as well as consultancy, analyst reports, and industry commentary.  *See*

25 https://www.juniperresearch.com/about-us.

26 [13] *Id.* (emphasis added).

27 [14] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-

28 country-2022-1 (internal quotation marks omitted).

$650 billion in 2020.[15]  That constitutes an average annual growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally."[16]  And, by all accounts, Defendant played a major role in spurning this rapid growth.  According to Richard Meyer, marketing expert and author of the blog, New Media and Marketing, "[s]ubscription marketing [has been] gaining steam ever since Amazon exceeded expectations with Amazon Prime[.]"[17]

16.     Defendant launched Amazon Prime in or around February 2005.  Through **Amazon Prime**, Defendant provides subscribers with access to, among other things, delivery benefits such as faster and free deliveries, streaming and digital benefits, shopping benefits, and reading benefits.  Additionally, Defendant debuted **Amazon Prime Video** in September 2006, as "Amazon Unbox."  Since then, Prime Video has been re-branded twice: in 2011, as "Amazon Instant Video," and then again in September 2015, when the word "Instant" was dropped from its title in the U.S.  Prime Video is offered as a benefit of the basic Prime subscription and as a standalone subscription to non-Prime members, and it provides consumers with access to unlimited, commercial-free instant streaming of thousands of movies and TV shows.  Also in 2015, Amazon launched **Amazon Prime Video Channels** (originally called Streaming Partners Program), which collectively refers to a variety of subscription offerings for third-party channels and streaming services offered to Prime

[15] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%.").

 *See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits?* (Oct. 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-now-but-are-you-reaping-the-full-benefits-02434851.

[16] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[17] New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

and Prime Video subscribers through the Amazon Platform.  These services are offered separate from the Prime and Prime Video offerings, and must be purchased separately (i.e., as an add-on subscription).  The original launch in the U.S. included channels such as Curiosity Stream, Lifetime Movie Club, AMC's Shudder, Showtime, Starz, and others.  The service subsequently added other partners, such as HBO, Cinemax, Discovery+, Noggin, and PBS Kids, among others.  Defendant has also offered **Audible** subscription plans for access to audiobooks and podcasts since 2008, when it acquired the company of the same name.  In July 2014, Defendant introduced **Kindle Unlimited**, a subscription offering that provides consumers with access to a library of over two million book titles, thousands of audiobooks, and up to three magazine subscriptions.  These benefits are accessible via the "Amazon Kindle" devices, a series of e-readers designed and marketed by Amazon, which is sold separately from Kindle Unlimited.  Later the same year, in November of 2014, Defendant launched **Amazon Photos**, a secure online storage subscription for photos and videos, which is available as a standalone subscription for consumers who enroll in Defendant's monthly storage plan offerings for increased data storage (*i.e.*, beyond the limited amount provided by default to Prime subscribers and other Amazon customers without Prime).  Then, in late 2016, Defendant launched **Amazon Music Unlimited**, a subscription program that provides paying subscribers with unlimited access to Defendant's full music streaming catalog.  Music Unlimited is available as a paid, premium version of Music Prime (which is a limited version included with the Prime subscription and is available to Prime subscribers at no additional cost beyond the renewal rate associated with the basic Prime subscription) or as a standalone subscription.  Defendant launched **Amazon Prime Book Box** in or around September 2018 as a standalone subscription offering for recurring deliveries of a curated selection of children's books.  Finally, **Amazon Kids+** (formerly FreeTime Unlimited), which was launched in or around September 2020, provides paid subscribers with access to thousands of kid-friendly books, movies, TV shows, educational apps, games, and more.

17.     As noted above, the production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to *Forbes*, "[t]he subscription e-commerce market has grown by more than

100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[18]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[19]  "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[20]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[21]

18.     The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover.  During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[22]  According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[23]

19.     However, as *The Washington Post* has noted, there are downsides associated with the subscription-based business model.[24]  While the subscription e-commerce market has low

---

[18] Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018), *available at* https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[19] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *available at* https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

[20] *Id.*

[21] *Id.*

[22] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

[23] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[24] The Washington Post *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), *available at* https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

---

barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[25] In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[26]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[27]  As these companies have realized, "[t]he real money is in the inertia."[28]  As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[29]  That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans.  They do this by intentionally confusing users with their app's design and flow, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics."[30]  To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[31]  Moreover, "the rapid growth of

---

[25] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[26] *Id.*

[27] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), *available at* https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[28] *Id.*

[29] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

[30] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[31] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[32]  Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[33] widespread utilization of these misleading dark patterns and deliberate omissions persist.

20.     Defendant has successfully implemented these tactics.  As of 2020, Defendant had "raised the global number of Prime members to 200 million," with an estimated United States "subscriber count of 147 million in 2021."[34]  In 2019, "roughly 65 percent of all Amazon shoppers were Prime members."[35]  Significantly, in 2020, "Amazon's net revenue from subscription services … amounted to 25.21 billion U.S. dollars."[36]  Based on this growth, Amazon CFO Brian Olsavsky noted in Amazon's second quarter earnings conference call held on July 29, 2021, that Amazon has "been fortunate to welcome more than 50 million new members in the past 18 months" and that he was "very pleased with the Prime member growth and engagement

---

[32] *Id.*

[33] *Id.*

[34] Statista, *Amazon Prime - Statistics & Facts* (Jul. 5, 2021), https://www.statista.com/topics/4076/amazon-prime/#:~:text=Since%20the%20service%20was%20first,of%20147%20million%20in%202021 (last accessed Oct. 8, 2021).

[35] *Id.*

[36] Statista, *Amazon: Global net revenue by product 2020* (Jul. 7, 2021), https://www.statista.com/statistics/672747/amazons-consolidated-net-revenue-by-segment/; *see also* Amazon News Release, *Amazon.com announces First Quarter Results.* (Apr. 29, 2021). https://ir.aboutamazon.com/news-release/news-release-details/2021/Amazon.com-Announces-First-Quarter-Results/default.aspx (last accessed Oct. 8, 2021).

   *See also* Securities and Exchanges Commission ("SEC"), 2020 Annual Report for Amazon.com, Inc., *available at* https://www.sec.gov/Archives/edgar/data/1018724/000101872421000004/amzn-20201231.htm#i75de98b9097f40f3b5884e541f532421_13, at 66 (showing $25.207 million net sales from subscription services segment in 2020, a 31.2% increase over net sales of subscription services in 2019 and a 77.915% increase over 2018 sales for same segment); *id.* (noting that this figure "[i]ncludes annual and monthly fees associated with Amazon Prime memberships, as well as digital video, audiobook, digital music, e-book, and other non-AWS subscription services.").

[Defendant is] seeing."[37]  Moreover, in recent months Defendant has enjoyed rapid growth to their Amazon Subscriptions user-base in light of the fact that "[o]verall time spent streaming has more than doubled since March[ 2020], when the U.S. and other countries largely shut down due to COVID-19."[38]  In fact, in 2020, "Prime Video had over 100 million subscribers … trailing only after Netflix[.] … The platform has seen particularly high audience growth … as a result of the coronavirus (COVID-19) pandemic."[39]  Similarly, Amazon was able to convince "50 million people to join Prime during the pandemic, accounting for an approximate 33 percent growth of the base."[40]

### B.   Defendant's Dark Patterns And Online Consumer Complaints About The Amazon Subscriptions

21.   Defendant's recent growth in revenues and subscriber count with respect to its Amazon Subscriptions coincides with a sharp decline in subscriber satisfaction as the Amazon Subscriptions and the platforms from which they operate have become riddled with "dark patterns."  A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[41]  Indeed, as Mark Hurst[42] has suggested, Amazon is among the many websites with large user bases that have implemented "deceptive design tricks to mislead users" by turning subscription cancellation into "a six-page

---

[37] The Motley Fool, *Amazon (AMZN) Q2 2021 earnings call transcript* (Jul. 30, 2021), https://www.fool.com/earnings/call-transcripts/2021/07/30/amazon-amzn-q2-2021-earnings-call-transcript/ (last accessed Oct. 8, 2021).

[38] Deadline, *Ad-Free Subscription Growth Outpaces Ad-Supported Fare During COVID-19* (May 29, 2020), https://deadline.com/2020/05/subscription-streaming-growth-outpaces-free-ad-supported-during-covid-19-1202946438/.

[39] Statista, *Amazon Prime - Statistics & Facts* (Jul. 5, 2021), *see supra note* 34.

[40] The Verge, *Amazon added another 50 million prime subscribers during the pandemic* (Apr. 15, 2021), https://www.theverge.com/2021/4/15/22385370/amazon-prime-subscription-jeff-bezos-2020-shareholders-letter (last accessed Oct. 8, 2021).

[41] UX Design, *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull, PhD Cognitive Science, who coined the term "Dark Patters" in August 2010).

[42] Mark Hurst is the founder of Creative Good, a New York-based consultancy and creative platform launched in 1997.  *See* https://creativegood.com/mark-hurst/.

---

process filled with 'dark patterns.'"[43]

22.     Defendant has been using various types of dark patterns, including but not limited to "roach motel,"[44] "misdirection,"[45] and "forced continuity," [46] in order to prevent user

---

[43] Creative Good, *Why I'm losing faith in UX* (Jan. 28, 2021), https://creativegood.com/blog/21/losing-faith-in-ux.html (last accessed Nov. 15, 2021) (discussing "Amazon's absurdly difficult, inconvenient process for turning off a Prime subscription"); *id*. ("UX is now 'user exploitation.'  *  A perfect example is the Amazon Prime cancellation process. … What should be a single page with a 'Cancel my subscription' link is now a six-page process filled with 'dark patterns' - deceptive design tricks known to mislead users - and unnecessary distractions.  This isn't an accident.  Instead, … there's a highly-trained, highly-paid UX organization at Amazon that is actively working to deceive, exploit, and harm their users.").  *See also* Mie Oehlenschlager, *Dark Patterns from Amazon into the Light* (Jan. 23, 2021), https://dataethics.eu/dark-patterns-from-amazon-into-the-light/ ("Amazon uses dark patterns or manipulative design which is – unfortunately – a common practice online[.] … 'Consumers are constantly bombarded by a variety of subtle and less subtle attempts to push us into making choices that favour the companies at the cost of our own time, attention, and money'").

[44] "Roach motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)." https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

*See also* Jeremy Merkel, *Dark Patterns Come to Light in California Data Privacy Laws*, XI Nat'l L. Rev. (Jul. 2, 2021), https://www.natlawreview.com/article/dark-patterns-come-to-light-california-data-privacy-laws#google_vignette ("When it comes to the roach motel, as the saying goes, 'roaches check in, but they don't check out.'  Drawing upon this allegory, researchers from the Norwegian Consumer Council (Forbrukerrådet) studied <u>Amazon's use of dark patterns to manipulate users into continuing their Amazon Prime subscriptions, even when they intended to cancel, and published their findings in a report in January</u>.  The conclusions served as the basis for a complaint by the internet privacy watchdog, the Electronic Privacy Information Center (EPIC), to the Office of the Attorney General of the District of Columbia, alleging that Amazon's use of dark patterns constitutes an unfair and deceptive trade practice in violation of the D.C. Consumer Protection Procedures Act and the Federal Trade Commission Act.") (emphasis added and internal footnotes omitted) (citations omitted); Forbrukerrådet, *You Can Log Out, but You Can Never Leave: How Amazon manipulates consumers to keep them subscribed to Amazon Prime* (Jan. 14, 2021), https://fil.forbrukerradet.no/wp-content/uploads/2021/01/2021-01-14-you-can-log-out-but-you-can-never-leave-final.pdf; *In the Matter of Amazon.com, Inc.*, EPIC Complaint, Office of the Attorney General for D.C. (Feb. 23, 2021), https://archive.epic.org/privacy/dccppa/amazon/EPIC-Complaint-In-Re-Amazon.pdf; FTC, *Statement of Commissioner Rohit Chopra Regarding Dark Patterns in the Matter of Age of Learning, Inc.*, *Commission File Number 1723186* (Sep. 2, 2020), https://www.ftc.gov/system/files/documents/public_statements/1579927/172_3086_abcmouse_-_rchopra_statement.pdf.

[45] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]"  https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[46] One example of "forced continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal."  https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

*See also* The Good, *Dark Patterns: The Ultimate Conversion Blocker for Ecommerce Websites*

1    unsubscription from the Amazon Subscriptions by adopting complex cancellation procedures to

2    increase the friction in the subscription cancellation process.  Defendant's utilization of these dark

3    patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-

4    renewal programs (discussed further below) – has led to a reduction in churn rates by making it

5    next to impossible for subscribers to cancel their Amazon Subscriptions.  It has further led to an

6    increase in accidental or unintentional sign-ups by consumers for paid Amazon Subscriptions, in

7    effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.

8        23.    Amazon's use of dark patterns is so egregious that the company's practices are

9    consistently used as examples to help writers explain dark patterns.  Indeed, one writer explained:

10   "A classic example of dark patterns is when you want to delete an Amazon account.  You can sign

11   up for Amazon in less than 4 clicks, but you'll need to go through at least 6 clicks across 5 pages

12   (including guesswork in selecting categories) and then chat with a representative if you want to

13   close your Amazon account."[47]  And as a writer for *The New York Times* similarly remarked,

14   "[s]ome things are difficult by design.  * Consider Amazon.  The company perfected the one-click

15   checkout.  But <u>canceling a $119 Prime subscription is a labyrinthine process that requires multiple</u>

16   <u>screens and clicks</u>. … These are examples of 'dark patterns,' the techniques that companies use

17   online to get consumers to sign up for things[ and] keep subscriptions they might otherwise

18   cancel[.]"[48]  Yet another writer explained: "Getting out of Amazon Prime poses one of the most

19   complex unsubscription service present among different subscription platforms, as it requires users

20   to go to different settings, pages, and ultimately ask for help … Amazon's Prime subscription

21   service cancellation is practicing 'dark patterns' that mislead people and change their minds.  The

22   _____

23   (Jun. 15, 2021), https://thegood.com/insights/dark-pattern-ecommerce-ux-design/ ("You've probably signed up for a free trial of something, forgotten to cancel it, and then automatically been

24   billed when the trial expired.  That's forced continuity.  You're not given an opportunity or reminder to opt out of the trial, and it's often exceedingly difficult to cancel before you're charged

25   for the premium subscription.  * <u>Unfortunately, this dark pattern is used everywhere, including</u> <u>Amazon Prime</u>.") (emphasis added)

26   [47] Fossbytes, *What Are Dark Patterns? Why The California Ban Makes Sense* (Mar. 16, 2021), https://fossbytes.com/dark-patterns-explained/.

27   [48] The New York Times, *Stopping the Manipulation Machines* (Apr. 30, 2021), https://www.nytimes.com/2021/04/30/opinion/dark-pattern-internet-ecommerce-regulation.html

28   (emphasis added).

rigorous process is said to be the way by the company to prevent people from unsubscribing, ultimately opting out because of the lengthy procedure."[49]  A writer demonstrating to consumers how to spot dark patterns said about closing an Amazon account that: "The instructions are buried under a help menu, and once you track them down, you learn there's no way to complete the process on your own.  You need to contact customer service to get the job done."[50]  These articles are a small sampling of those that use Amazon's concerning practices as an example for dark patterns.[51]

24.     Defendant's shady conduct with dark patterns in both 2018 and 2019 even earned "The Dark UX Award," by a consumer vote on a website dedicated to "[c]elebrating excellence in

---

[49] Tech Times, *Amazon Prime 'Dark Pattern' of Service Cancellation Explained: Why Consumer Groups Think It's Unfair and Deceptive* (Jan. 14, 2021), https://www.techtimes.com/articles/255977/20210114/amazon-prime-dark-pattern-service-cancellation-explained-why-consumer-groups.htm.

[50] Consumer Reports, *How to Spot Manipulative 'Dark Patterns' Online* (Jan. 30, 2019), https://www.consumerreports.org/privacy/how-to-spot-manipulative-dark-patterns-online-a7910348794/.

[51] *See also, e.g.*, Speccy Media, *Dark Patterns and how they trick us online* (May 19, 2021), https://speccymedia.com/dark-patterns/ ("One of the largest companies in the world, Amazon, makes it virtually impossible for you to delete your account with them. … To delete your account you might think a logical place to look for the option would be within the 'Account & Lists' menu just to the right of the search field. … When you open up that menu, … you see[] … [a] ton of options, none of which are the one we are looking for.  * Instead, you'll need to scroll down to the very bottom of the page until you see the footer. Within the footer, you'll see a small link that simply says 'Help'.  If you click that, … it leads[ to a new webpage] … with a whole heap more options!  My immediate thought was to scroll to the Search field and type 'Delete Account' but that just lead me to even more options, none of which was anything to do with deleting my Amazon account. … The only way to delete your account with Amazon is to select 'Contact Us' and then plead with one of the representatives to Close and delete it for you, there is no way for you to perform this action yourself or any shred of evidence that this is even possible at all.  And this is from one of the largest, most-respected companies in the world!") (emphasis added); The Good, *Dark Patterns: The Ultimate Conversion Blocker for Ecommerce Websites* (Jun. 15, 2021), https://thegood.com/insights/dark-pattern-ecommerce-ux-design/ ("You've probably signed up for a free trial of something, forgotten to cancel it, and then automatically been billed when the trial expired.  That's forced continuity.  You're not given an opportunity or reminder to opt out of the trial, and it's often exceedingly difficult to cancel before you're charged for the premium subscription.  * Unfortunately, this dark pattern is used everywhere, including Amazon Prime.") (emphasis added); The Markup, *Dark Patterns that Mislead Consumers Are All Over the Internet* (Jun. 3, 2021), https://themarkup.org/2021/06/03/dark-patterns-that-mislead-consumers-are-all-over-the-internet ("In January, after researchers accused Amazon of making it too difficult for Prime members to cancel their subscriptions, the Norwegian Consumer Council filed a legal complaint with Norway's consumer protection authority, while the U.S. consumer advocacy group Public Citizen requested that the FTC investigate Amazon's dark patterns for maintaining subscriptions.").

user experience[.]"[52]  This so-called "award," however, is not really as it sounds: "This category … is about dark UX patterns being used to deliberately trick or mislead users into actions they might not have taken otherwise."[53]

25.     More recently, Amazon's practices have been the subject of studies regarding dark patterns, including one report done by the Norwegian Consumer Council ("NCC"): "This year, we launched a report on Amazon where we analyzed the click flow of Amazon in Amazon Prime. And what we discovered was they were putting so many hurdles in front of the consumer, including complicated navigation menu, skewed wording, confusing choices, and repeated nudging, confirm shaming, which … are really effective sort of measures to manipulate consumers."[54]  The results of the study prompted NCC to file its own complaint in Norway "about Amazon's absurdly difficult, inconvenient process for turning off a Prime subscription."[55]  That complaint stated: "The cancellation procedure is long, and consists of six separate pages.  On each separate page, the consumer is nudged toward keeping their Prime membership … This uncertainty is further strengthened by having to scroll through the page, which is full of text and graphics to show how cancelling the membership will mean the loss of many benefits."[56]

26.     Despite the above demonstrated consensus concerning how unsettling Amazon's practices are, Defendant continues to employ these deceptive tactics to lure consumers into enrolling, and remaining enrolled, in paid Amazon Subscription programs.  In fact, Defendant was the subject of a recent *Business Insider* article by author Eugene Kim, titled "Internal documents show Amazon has for years knowingly tricked people into signing up for Prime subscriptions. 'We have been deliberately confusing,' former employee says."[57]  The article describes a

---

[52] *The Dark UX Award* (2019), https://uxukawards.com/best-dark-ux/.

[53] *Id.*

[54] KnowledgeVision, Transcript for FTC DarkPatterns Workshop (Apr. 29, 2021), *available at* https://www.ftc.gov/system/files/documents/public_events/1586943/ftc_darkpatterns_workshop_transcript.pdf (emphasis added).

[55] The Creative Good, *Why I'm losing faith in UX* (Jan. 28, 2021), *available at* https://creativegood.com/blog/21/losing-faith-in-ux.html.

[56] *Id.*

[57] Business Insider, *Internal documents show Amazon has for years knowingly tricked people into signing up for Prime subscriptions. 'We have been deliberately confusing,' former employee says*

particularly haunting example of dark patterns employed by Defendant: "For example, a single click on the 'Get FREE Two-Day Delivery with Prime' tab at check out – with *no additional confirmation step* – gets shoppers automatically enrolled into a 30-day free trial of Amazon's Prime program, which later converts to a paid membership unless the user cancels it."[58] According to Kim, "previously unreported internal documents and six current and former employees" have confirmed that "Amazon was aware of these complaints for years but did not take serious action," and that "[e]ven the company's most senior leaders were aware of this problem." *Id.* Even worse, "fixes for these issues were proposed and considered, but resulted in lower subscription growth when tested, and were shelved by executives." *Id.* The current and former employees expressed further concern despite some changes made to Amazon's sign-up pages, saying "repeated red flags in the sign-up process have not been meaningfully addressed, even now," and the "lack of change may have to do with internal tests that showed that clearer language led to fewer sign-ups. *Id.* Customer confusion has been an ongoing problem with Amazon's Prime service: "One data point from August 2017 found that 17,131 of the 25,542 cancellation requests directly handled by the Prime team were related to 'accidental sign-ups,'" meaning customers were deceived into signing up for a Prime account and later forced to contact the Amazon team to ensure their desired cancellation would be effective. *Id.* Mr. Kim's article on Defendant's deceptive practices, and the willingness of current and former Amazon employees to discuss said practices, is extremely telling as to why Defendant's tactics need to be stopped.

27.     Defendant's conduct has drawn the attention and ire of customers across the country, with countless angry customers taking to the Internet to voice their discontent over Defendant's broken promises. For instance, numerous subscribers have left scathing reviews on the Better Business Bureau website, complaining of the unclear billing practices and confusing cancellation policy associated with the Amazon Subscriptions:[59]

---

(Mar. 14, 2022), *available at* https://www.businessinsider.com/amazon-prime-ftc-probe-customer-complaints-sign-ups-internal-documents-2022-3.

[58] *Id.* (emphasis added).

[59] *See* https://www.bbb.org/us/wa/seattle/profile/ecommerce/amazoncom-1296-7039385/complaints.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



09/25/2021

I have an Amazon Prime account which I use to be able to get free shipping. I had decided to cancel the account on the 14th of September, since I was not using it. I was sent a message that I would be refunded $13.90 in 3-5 business days. I checked the account on the 25th of September, with no refund. I called customer service and found that they charged my daughters card instead of mine. I remove my cards after 24 hours due to hacking. Customer service says they charged my daughter and then sent her the refund. The last time my daughter used Amazon was in April, which her card was also promptly removed. The only cards that show up on my account is my two cards. Why did Amazon charge someone who is not on the account and then refund money that was not theirs. When asked to speak to someone who is in charged, the CS rep stated you can go no further. I would like to have this resolved with public knowledge known. Amazon does not erase your cards when you remove them from the site.



08/23/2021

I keep getting charged and pay for Amazon prime even though I canceled the service months ago both online and via phone call. I ordered a phone for my elderly father and it said "delivery due Thursayd...the delivery due Friday then delivery due Saturday and now it says delayed. It is a criminal money mongering gimmick to get people to pay inflated prices for speedy delivery. It is fraud and I want restitution. I canceled this service long ago. I also kept getting charged for Amazon music after canceling it. I am no longer being charged for that, however. They gave me a credit for false charges for that. Amazon is stealing millions. Unreal this is allowed to happen. Also...as an American English speaking person I would expect to call and talk to someone who speaks clear english...not the case with my Amazon experience.



08/21/2021

I signed up for a something called Peacock Channel which is a live entertainment streaming service. When I go onto Amazon.com ( the service tells me to go there to update membership) the service does not appear in my subscription area on Amazon. Therefore, I have NO POSSIBLE WAY OF UNSUBCRIBING FROM PEACOCK CHANNEL



08/17/2021

I signed up for a free trial at Amazon Prime Video and ended it before the free trial was up. I received a notice that the Prime Membership was paused on March 13,2021. But I started seeing charge of $5.99 on my March Credit Card dated Feb,March,April,June and July 18th each month Under Amazon Video. I contacted them and they said there were no such charges. I forwarded them scans of all the bills as well as the charges and of the membership being paused. I have tried to contact them for a confirmation of the documents, but they just send long emails with all the ways to call them with no mention of my claim.

08/02/2021

I just learned today that Amazon Prime has been double billing me. They opened an acct by my email and by my cell phone and both charged me $16.14/mo for at least 2 years. I also learned that they have been charging me for 3 video services that I never ordered and have not used: *****, *** and **** ***. I want a history of charges to these two accounts and want my money refunded. The person on the phone would only refund 3 months of charges. And they refuse to print my history. They only transferred me to the next person and I had to repeat the whole thing over and over. They do it to irritate customers. Very f'ed up of them. But they know what they're doing and they want to make it impossible to get info. If they are intelligent enough to double bill me, then they can produce the billing history so I know who much they've stolen from me.



08/06/2021

Amazon keeps charging me for a Prime membership fee even though I never signed up for it, and I don't want. I have asked them to cancel it multiple times and turn off whatever setting is causing this, and still it appears. It has taken me so much time to cancel this charge each month.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



07/18/2021

Every month Amazon takes 13.63 from my checking for a Amazon Prime membership. I canceled my prime membership months ago. I have to fight every month to get my money back. This month they charged me again 13.63.



07/13/2021

Charged $13.60 for Amazon Prime account without my permission. I do not want Amazon Prime, I did not request it, this $ was stolen from my account & not refunded immediately when requested.



07/07/2021

In June AMAZON selected me for a free Amazon prime trial without my knowledge. 30 days later my bank account was charged 12.99. I complained & a refund was issued. The same has occurred in July with am Amazon prime charge I never set up. I have tried to resolve this with customer service in June 2021 and now July 2021. I understand when trials are set up inadvertently but that's not the scenario. Please help investigate and uncover this free trial added without my permission

07/07/2021

I am getting charged for an Amazon Prime account that i did not authorize on my ***** Shop Your Way credit card. I was unaware I was being billed initially and I never signed up for this. I contacted the credit card company and they told me to resolve it with Amazon Prime. I contacted Amazon Prime and they removed the charge but I am still getting billed monthly. Amazon is aware of the account, so it exists, however, when I go online to cancel it there, the account does not exist. Amazon Account number: ********* My email: ******************** My phone number: *********** This is the phone number and email address that I used to contact Amazon with.



06/11/2021

I had a free trail with Amazon for their Prime service. On May 30, I checked on their website and was told the trail lasted for another 105 days. On June 1 I was charged $8.71 for Amazon Music, but I never authorized any subscription to Amazon Music or approved any other Amazon Music transaction. It looks like they lied about the free trail to charge me for their services.



06/10/2021

I noticed a charge on my bank statement from Amazon Prime for $13.88. I didn't k now what that charge was for so I called Amazon. I was told it was for my Amazon Prime subscription. I told her I didn't have/need a subscription since a friend added me to her account (as allowed by Amazon). I asked when did I start this subscription and was told July 2019!! The agent tried to be helpful, but after several holds I was told the only thing she could do was offer me 6 months refund. I asked to talk with a supervisor. I explained it all again to a gentleman who didn't seem to care. He asked if I realized how many times I had ordered getting the free Prime shipping rates? I told him I had been getting this because of my friend. I asked how did I subscribe? He said it was because I had clicked on the 1-2 day Prime ship rate. He also said I had been sent an email letting me know. I asked if he could provide a copy and he said no. I did not agree to this subscription and would like a total refund



06/04/2021

I had a Amazon prime account. I chose to cancel it and not renew it. But for the last 5 months it continues to charge different cards that are in my account. I have called each month and they continue to tell me that it will not try to renew for the next month. But each month it continues to do it. I am tired of calling each month to have it stoped. I have chosen "online" as well as had the customer service people I have spoken to each month stop it from doing it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

05/27/2021



In January of 2021 Amazon started charging my card for two memberships. 1/04/2021 - 13.90 1/12/2021 - 14.03 2/03/2021 - 13.90 2/12/2021 - 14.03. I caught this error in February and tried to cancel this membership and the second membership they said I had. 3/12/2021 - 14.03 This was the only charge. (This shouldn't have been charged at all) 4/07/2021 - 13.90 - They added back the account I canceled. (This has yet to be refunded) 4/12/2021 - Another 14.03 charge (This has been refunded) 5/12/2021 - Again another 14.03 charged for a canceled membership. (Agent today said they are refunding this) I am so tired of dealing with this company I need something done. Because no one that helps me does it right and I keep getting charged for services I'm not even using because I canceled them.

05/29/2021



In approximately early October of 2020 I was blocked from a consumer account with Amazon. I was upset about it initially but after about a month I gave in and just figured oh well, I will utilize other businesses for what I need. However, Amazon continued to charge for prime until today May 29th because I cancelled over the phone. Every month I was charged I called and spoke to their representatives who told me that they were escalating the issue to get my account back and they couldn't cancel because my account was on hold. Finally today May 29th, 2021 I was told by a representative that I had to dispute the charges with my bank. This is fraud and absolutely ridiculous that I have been charged for prime for 7 months when I kept getting told they were trying to fix knowing very well that nothing could be done. It's sad that a big corporation like Amazon is this way. I have times and dates of calls and also my bank statements showing charges if needed.

04/29/2021



On April 24, I found an offer in my Amazon account (which I was logged into at the time) offering me a free 30-day trial for Amazon Prime. I signed up for the free 30-day trial and then was immediately billed for it. I have contacted Amazon numerous times to attempt to resolve this and here is the litany of nonsense I have been told: 1. I have more than 1 Amazon account (not true) 2. I signed up on my phone and that's why it is is not free (also not true--you can't sign up for prime on the mobile app) 3. I was not logged into my account when I clicked on the offer; had I been logged in I would not have been able to sign up (also not true) 4. There was a system error that offered me the free trial, so Amazon is not responsible for it All of the above is, of course, absolute nonsense and there is no way all of these things could be true at the same time. In addition, when speaking with Amazon, I have been interrupted, talked over, hung up on. They have also deleted chat records.

04/14/2021



15 Months of subscription Charges for Amazon Kids charged without consent. These Charges were never authorized and started auto charging a year after the children were gifted Amazon Fire tablets for Christmas. The Tablets required to be hooked up to an existing Amazon account to be activated and stated nothing about subscription charges. In addition the Subscription charges did not appear Order history or in Subscriptions. It only appears in Digital Orders. We make no digital order except a reoccurring Prime subscription so we had no reason to check this part of the site

04/10/2021

I was charged for a Amazon Prime yearly membership when I purchased something as a Guest on Amazon. I did not agree to any Prime membership. In fact, my Amazon account was old w incorrect information. Im on fixed income and this may cause my medication payments to bounce. Apparently this a a nationwide problem and Amazon does not stop and target vunerable people.



04/07/2021

We have been charged more than 600 $ by Amazon for their Kindle Unlimited subscription for more than five years without knowing we had this service. Amazon never sent us any emails or notifications saying we subscribed to this service either. I recently found out about this charge and contacted Amazon immediately, but they said they can only refund the current month and asked us to contact bank for the refund of other charges. Unfortunately, the bank notified us they can only refund a few more months. After all these calls, I only got about 80 $ back. I feel very disappointed about Amazon customer service and think they cheated their customers money. We also feel very frustrated about this whole process between them and the bank. I sincerely hope you can help us solve this problem and recover our losses.

03/03/2021

On March 2, 2021, Amazon charged me for a service I did not sign up for. As always, the customer must file a formal complaint to speak to anyone at Amazon because Amazon thinks they're too good to communicate with their customers via email.

28.     Other subscribers to the Amazon Subscriptions left similar complaints on the

Trustpilot website:[60]



CB   **Colin Billington**
    ✎ 3 reviews

★☆☆☆☆                                          May 6, 2021

**Videos limited and access problems**

Could not access videos wanted to charge me all the time and was very limited selection anyway. Also the number of steps to cancel subscription was ridiculous.

PL   **Pro loque**
    ✎ 5 reviews

★☆☆☆☆                                   Updated Apr 29, 2021

**prime video keep charging membership**

I though I did cancel the subscription and then found out they still charged me for the membership. They make it difficult to cancel the membership. I have removed my credit card from amazon as they can't be trusted.

PT   **Philippe Treacy**
    ✎ 1 review

★☆☆☆☆                                          Mar 16, 2021

**Impossible to cancel**

Impossible to cancel. Can't do it on the app you need to use your browser and then when you click the cancel membership button nothing happens and my card still gets charged. When I went to contest the charge via a chargeback they started charging my girlfriends credit card. Avoid at all costs.

---

[60] *See* https://www.trustpilot.com/review/primevideo.com?stars=1&search=cancel.



**S Martin**
✎ 3 reviews

★☆☆☆☆                                                              Feb 1, 2021

### Amazon Prime is rammed down the throat...

Amazon Prime is rammed down the throat of anyone who logs in. There are many ways that anyone with one wrong click can end up with an Unwanted Prime account. It is made much more difficult to cancel this unwanted option. The cancellation page is buried down inside your account details. When you do reach it and select Cancel it does not cancel but offers to Keep this unwanted option. When you again opt to cancel it still does not cancel but again offers to keep this unwanted option. When you select to cancel for the 3rd time it still does not cancel for the next month. There seems to be no-way of Immediately cancelling an accidental/unwanted Prime membership! 1 click to accidentally get Immediate unwanted Prime membership. After going to your Account Details it's 3 clicks to be offered cancellation starting Next Month!



**Andy Greene**
✎ 1 review

★☆☆☆☆                                                              Feb 1, 2021

### Very underhanded how they cojole you...

Very underhanded how they cojole you into signing up & make it very difficult to cancel. It must be bordering on misleading consumers I think. A bit shameful to be honest how they do it.



**Eric Dale**
✎ 1 review

★☆☆☆☆                                                              Jan 2, 2021

### Unwanted prime membership

Ordered an item that came with free delivery only to find that I had been charged for prime membership. Despite the free postage outside of prime I was charged 50% of the monthly fee to cancel my 2 hour 'unused' prime membership. Complete rip off



**Neil Finney**
✎ 3 reviews

★☆☆☆☆                                                              Dec 29, 2020

### Unwanted amazon prime

After buying a item off amazon I find that a substription for amazon prime was taken from my bank account when I had not subscribed and it's not easy to cancel. I shall not be buying anything else from amazon disgusting

1
2  Jason
2 reviews
3
4 ★ ☆ ☆ ☆ ☆                                    Nov 18, 2020
5 **Very difficult to find on the site...**

Very difficult to find on the site where to ==cancel== membership. This is obviously
6 a cunning and deceptive method Amazon uses to prevent people cancelling
their membership
7  Will Fix
1 review
8
★ ☆ ☆ ☆ ☆                                    Updated Nov 14, 2020
9
**This is how Amazon became one of the...**
10 This is how Amazon became one of the biggest foundation. You buy one item,
could be simple like I did $16 thing. With no contract it took 5 monthly
11 payments of Amazon prime then I worked on to cease it, no one click to
==cancel==. I talked this issue out and found millions are falling in the same trap.
12 Amazon guy see u in hell for stealing people's money.
13  Tudor Tusha
8 reviews
14
★ ☆ ☆ ☆ ☆                                    Nov 9, 2020
15 **Zero stars**
16 Free is only the worst movies. For a good movie you need to pay more. I
cannot even ==cancel== the account. Zero stars.
17  Mr Mc Donald
18 13 reviews
19 ★ ☆ ☆ ☆ ☆                                    Nov 3, 2020
20 **Be very careful with this service**
Be very careful with this sErvice. It seems that you are signed up for it
21 whatever you order on their website. I have had to ==cancel== this service now 4
times and have decided not to order from Amazon any more as they hide the
22 fact they are signing you up fpr the service which isn't worth it anyway. It
seems whatever you do at checkout they decide to sign you up even if you
23 don't want it, BE CAREFUL !!!
24  Charlotte
3 reviews
25
★ ☆ ☆ ☆ ☆                                    Feb 19, 2019
26
**Disgusting**
27 Disgusting. The way Amazon confuses you into pressing agree to the free trial
and then makes it near on impossible for you to ==cancel== it. Shame on you
28 Amazon

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**I don't know how I even became a member...**

I don't know how I even became a member of Amazon Prime. But I noticed that I am being billed $12.99 for Amazon Prime. I called to ==cancel== it and I get a recording telling me that they are not answering the phone and I can do business with them by logging into my account. Problem is how do I get credited for the 2 months they billed me for?



**I clicked for 30 day free trial**

I clicked for 30 day free trial, couldn't stream the series I wanted, after 30 days they started debiting my card without advising me they'd signed me up for paid membership! It's taken two days to ==cancel== everything, I have asked for money back, i will see! Surely that is illegal if you just start with the free trial!!



**Wanted to buy a simple gift on the...**

Wanted to buy a simple gift on the Amazon site - and ended up with a free trial of Prime! Apparently by ticking the box for free one day delivery that automatically enrolls me in a one month trial and then auto renewal - and a fee!! Yuk - Amazon, this kind of entrapment sucks. Had to crawl through your site to ==cancel== it, purposefully tha'ts made difficult. You had a great name - but Prime is dragging you down. Not a customer any more, don't trust your site

29.     Yet more unhappy subscribers left complaints in the comments of a YouTube video created to aid consumers in navigating the confusing Amazon Subscription cancellation process. Many were grateful to the video creator for explaining how to cancel where Defendant failed:[61]



30.     The above reviews are just a sampling of numerous negative reviews consumers have left regarding Defendant's Amazon Subscriptions and the unclear cancellation policies and confusing billing associated with the Subscriptions.  As discussed below, the above online

[61] *See* https://www.youtube.com/watch?v=YUlGTOaHslM.

consumer complaints reveal a widespread pattern of uniform unlawful conduct by Defendant, underscoring the artifice devised and employed by Defendant to lure and deceive millions of consumers into enrolling, and remaining enrolled, in their paid Amazon Subscription programs.

### C.     California's Automatic Renewal Law

31.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent). More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

32.     The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

> (2)  Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

> (3)  Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

33.     Section 17602(b) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(b).

34.     Additionally, following the 2018 amendment to the ARL, the updated law requires e-commerce sellers, doing business in California, to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(c) provides:

> [A] consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online*, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).  The updated ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged.  Sellers must also explain the price to be charged when the promotion or free trial ends.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *Id.*

35.     Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

36.     Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures:  (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to

which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

37.    Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601(c).

38.    Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business[.]"  Cal. Bus. & Prof. Code § 17603.

39.    As alleged below, Defendant's practices on the Amazon Platform systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

**D.    Defendant's Business: The Amazon Subscription Enrollment Process**

40.    At all relevant times, Defendant offered, via the Amazon Platform, various Amazon Subscriptions for access to exclusive Amazon content, products, and/or services on a contract or fee basis.  The Amazon Subscriptions are offered on a recurring basis for monthly or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels.  For example, when customers sign up for Amazon Prime on a free trial basis, at the end of the initial one-month trial period, their subscriptions are converted to paid subscriptions and charged the full amount, $12.99, for the next month, and every month thereafter if they do not cancel.  Similarly, customers enrolled for the monthly Prime Video Subscription on a free trial basis are, after the initial one-month term, automatically charged the full standard monthly rate of $8.99 for the subsequent month, and every month thereafter if they do not

cancel.[62]  After the initial trial period ends, customers similarly enrolled in a free trial subscription of Audible are also automatically charged the full standard monthly rate of $7.95 for the subsequent month, and every month thereafter if they do not cancel.[63]  Defendant's Amazon Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

41.     To sign up for one of Defendant's Amazon Subscriptions, the consumer must first select a program.  From the Amazon Website, prospective subscribers can review features of – and find links to the individual enrollment webpages for – each of Defendant's subscription offerings, including the Amazon Subscriptions at issue.

42.     Consumers can sign up for one of Defendant's Amazon Subscription plans through the Amazon Website or, in some cases, the Amazon Apps.  Defendant automatically enrolls customers who purchase a paid Amazon Subscription or free trial via the Amazon Website and/or the Amazon Apps in their chosen Amazon Subscription program going forward, by default.  In addition, customers may sign up for any of the Amazon Subscriptions on a free-trial basis for a limited time.  Nevertheless, customers that enroll in a free trial, like those that sign up for a paid subscription, must provide Defendant their payment information at the time of enrollment. Customers' free trial subscriptions automatically convert to paid monthly subscriptions at the end of the trial period, at which point those users are also automatically enrolled by Defendant in their chosen Amazon Subscription program, and as such their Payment Methods are automatically charged by Defendant on a recurring, monthly or yearly basis in the amount of the full, promotional, or discounted rate associated with that program, continuing indefinitely until the customer takes affirmative steps to cancel.

---

[62] Currently, "Prime Video is included with an Amazon Prime membership for $13 a month or $119 a year," but if customers are not interested in other Prime perks, they can "sign up for Prime Video on its own for $9 a month."  Business Insider, *Prime video lets you stream original movies, shows, and Thursday night football games - plans start at $9 A month* (Aug. 6 2021), https://www.businessinsider.com/what-is-prime-video.

[63] The enrollment process for Defendant's monthly and annual subscription offerings for Amazon Music Unlimited, Amazon Prime Video Channels, Amazon Prime Book Box, Amazon Kids+, Kindle Unlimited, and Amazon Photos is substantially similar to the above examples.

43.     The enrollment process for each Amazon Subscription at issue is substantially the same, regardless of the medium used.  For instance, after selecting one of the Amazon Subscriptions, those navigating the enrollment process on the Amazon Website are directed to a final webpage (the "Checkout Page"), where prospective subscribers are prompted to input their payment information and then invited to complete their purchase.[64]  For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer[,]" which in this case pertains to the text nearby the final yellow button that customers must press in order to complete the checkout process.

44.     By way of example, when a consumer signs up for a free trial of Amazon Prime, the "relevant portion of the Checkout Page" refers to the disclosures in the block of text immediately below the "Start your 30 day free trial" button (i.e., the "request for consent"):[65]



---

[64] Defendant requires basic users to register or create an account in order to utilize features on the Amazon Platform, so prospective subscribers to any of the Amazon Subscriptions must either create an Amazon account or "sign in" to a preexisting Amazon account before they can reach the Checkout Page.

[65] Defendant also occasionally offers trial subscriptions at a promotional price for a limited period of time.  For instance, at least as of November 15, 2021, consumers who subscribed to Prime through Defendant's website were offered an "Amazon Prime One Week Trial for only $1.99" that, after one week, will automatically renew at the full standard rate of $12.99 per month.  On this version of the Amazon Prime Checkout Page, the final yellow checkout button reads "Try Prime[,]" with the following text appearing beneath that button:

45.     Similarly, the relevant portion of the Checkout Page for a free trial subscription to Amazon Music Unlimited refers to the block of text immediately below the "Sign-up and pay" button:



46.     The layout and text of the Checkout Pages for each of the other paid Amazon Subscriptions (including, without limitation, Amazon Prime Video, Amazon Prime Video Channels, Amazon Prime Book Box, Amazon Kids+, Kindle Unlimited, Audible, Amazon Photos,

By signing up, you agree to the <u>Amazon Prime Terms</u> and authorize us to charge default payment method or another payment method on file. **After your One-Week $1.99 Trial of Amazon Prime, your Amazon Prime membership continues for $12.99/month until cancelled. If you do not wish to continue for $12.99/month + any taxes, you may cancel any time by visiting Your Account.** For customers in Hawaii, Puerto Rico, and Alaska please visit the <u>Amazon Prime Shipping Benefits</u> page to check various shipping options. (Bolding in original, underlining added to denote hyperlink).

and any other paid Amazon Subscription) is aesthetically and functionally similar to the Checkout Pages for Amazon Music Unlimited and Amazon Prime shown above.[66]  In all cases, the relevant portion of the Checkout Page fails to adequately disclose the automatic renewal terms associated with Defendant's Amazon Subscriptions in the manner required by law.

47.     Regardless of how the consumer subscribes (via the Amazon Website, on either its desktop or mobile format, or the Amazon App), and irrespective of which Amazon Subscription (whether Amazon Prime, Amazon Prime Video, Amazon Music Unlimited, Amazon Prime Video Channels, Amazon Prime Book Box, Amazon Kids+, Kindle Unlimited, Audible, Amazon Photos, or any other paid Amazon Subscription offered to California consumers during the Class Period) and of which specific plan the subscriber selects (whether the paid, free trial-to-paid, or the discounted-rate student monthly subscription options), Defendant fails to disclose the full terms of its auto-renewal programs either before or after checkout, and it never requires the individual consumer to read or affirmatively agree to any terms of service, *i.e.*, by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for their Amazon Subscriptions.  Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – their subscribers before charging consumers' Payment Methods on a recurring basis.

### E.     Defendant Violates California's Automatic Renewal Law

48.     At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiffs' and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. &

---

[66] Although Defendant has, from time to time, altered the text featured on the Amazon Subscription Checkout Pages, in all cases the relevant portion of the Checkout Page refers to the block of text immediately below the final yellow button that a subscriber must click in order to complete the checkout process, which, in the above examples, reads "Start your 30 day free trial," "Try Prime," and "Sign-up and pay."  As another example, the final yellow checkout button featured on the version of the Audible Checkout Page that appeared on Defendant's Website on or around October 29, 2021, reads "$0.00 Unlock Free."

Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).

i.    **Defendant Fails To Clearly And Conspicuously Present The Amazon Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

49.    First, the relevant portion of the Checkout Page for each of the Amazon Subscriptions does not present the complete "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code § 17601(b), in violation of Section 17602(a)(1) of the ARL. Specifically, although the Checkout Pages for the Amazon Subscriptions explains that by signing up the consumer authorizes Defendant to charge his or her Payment Method after the free trial ends and that the subscription will continue until cancelled, a reasonable consumer would find that statement unclear in regards to whether formal cancellation is required in order to stop Defendant from automatically charging renewal fees to customers' Payment Methods on a recurring basis. Moreover, this term appears *beneath* the yellow "final checkout" button (*i.e.*, the request for consent featured on any Amazon Subscription Checkout Page), which is *not* the portion of the Checkout Page with which the ARL is concerned, as reasonable consumers do not typically read past the final checkout button. By contrast, the portion of each Checkout Page that is in "visual proximity" to the request for consent is utterly silent as to the recurring nature of the Amazon Subscriptions and their associated automatic renewal fees. Moreover, the text featured beneath the final checkout button of each Checkout Page is in smaller type than – and is *not* presented in contrasting font or color to – the surrounding text, and it is not set off from the surrounding text of the same size by any symbols or other marks in a manner that clearly calls attention to the language. In other words, the disclosure was presented in such a way that it could be, and was, easily overlooked, and is therefore not "clear and conspicuous" as defined by Section 17601(c) of the ARL. As such, with respect to each of the Amazon Subscriptions, Defendant fails to adequately disclose "[t]hat the subscription or purchasing agreement will continue until the

consumer cancels" in the manner required by statute.  *See* Cal. Bus. & Prof. Code §§ 17601(b)(1), 17602(a)(1).

50.     Similarly, the relevant portion of the Checkout Pages for the Amazon Subscriptions do not adequately disclose the recurring amount to be charged to the subscriber's Payment Method each billing period.  For instance, the Amazon Prime Checkout Page shown above, *see supra* ¶ 44, provides that subscribers will be charged $12.99 per month after the free trial period ends, that term appears *beneath* the yellow "final checkout" button (*i.e.*, the request for consent featured on any Amazon Subscription Checkout Page).[67]  Likewise, the Amazon Music Unlimited Checkout Page shown above, *see supra* ¶ 45,  provides that subscribers will be charged $7.99 per month after the free trial period ends, which again appears *beneath* the yellow final checkout button.  However, as explained above, the presentation of terms in this part of the Checkout Page beneath the checkout button is <u>not</u> the "visual proximity" that the ARL requires, and is therefore *not* the portion of the Checkout Page with which the ARL is concerned.  As above, the text appearing *above* the final checkout button on the Amazon Prime Checkout Page is utterly silent as to the recurring amounts to be charged following enrollment and/or the end of the trial period.  Thus, with respect to Amazon Prime at least, Defendant fails to provide notice of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(3), in violation of Section § 17602(a)(1) of the ARL.

51.     For each of the Amazon Subscriptions, Defendant also fails to present a complete "description of the cancellation policy that applies to the offer[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(2).  For instance, with respect to cancellation, the relevant portion of the Checkout Page

---

[67] Moreover, the recurring monthly price listed on the Amazon Prime Checkout Page is $12.99, but, as discussed below, the *actual* recurring monthly price charged to Ms. Nacarino's and other California consumers' Payment Methods in connection with Amazon Prime was $14.09, which includes the full membership fee ***and applicable fees and taxes***.  Thus, even had this required automatic renewal offer term been conspicuously disclosed in the Checkout Page (it was not), the disclosure as written provides false information, and Ms. Nacarino and California consumers still would not have been placed on notice of the actual recurring price to be charged in connection with Amazon Prime.

for Amazon Music Unlimited states: "Cancel renewal any time in by visiting Your Amazon Music Settings."  Similarly, the relevant portion of the Amazon Prime Checkout Page states: "you may cancel any time by visiting Your Account."  And the relevant portion of the Audible Checkout Page merely directs subscribers to "Cancel anytime."  The Checkout Pages for the other Amazon Subscriptions at issue provides substantially the same disclosure(s) regarding the basic ability to affect cancellation.  However, the Checkout Pages for the Amazon Subscriptions contain no explanation of *how* to cancel.  For instance, the Checkout Pages do not mention that, in order to cancel, subscribers must find and click a "Manage Membership" button, and be "redirected to Prime Central where you'll want to select Update, cancel, and more and follow the on-screen instructions," as is set forth elsewhere in the Amazon Website.[68]  The Checkout Pages also fail to place subscribers on notice that, in order to receive a refund upon cancellation, only "Paid members who haven't used their benefits are eligible for a full refund of the current membership period," and they must cancel their Amazon Subscriptions "within 3 business days of signing up or converting from a free trial to a paid membership" to obtain a refund, as is also set forth elsewhere in the Amazon Website.[69]  Moreover, Defendant does not specify anywhere on the Checkout Pages that customers must "notify [Amazon] before a charge that [they] want to cancel or do not want to auto renew" in order to avoid being automatically renewed and billed for the following renewal term, as do terms set forth on other pages of Defendant's website.[70]  Yet, prior to checkout, Defendant was obligated by law to place consumers on notice of these aspects of Defendant's cancellation policy in accordance with the ARL, which requires that companies provide such information "in visual proximity to the request for consent to the [automatic renewal] offer."  Cal. Bus. & Prof. Code § 17602(a)(1).  However, Defendant failed, and continues to fail, to satisfy that requirement.

---

[68] https://www.amazon.com/s?k=how+to+cancel+prime&crid=33FPBJ6XUBLI4&sprefix=how+to+cancel+prime%2Caps%2C151&ref=nb_sb_noss_1.

[69] https://www.amazon.com/gp/help/customer/display.html?ref_=help_search_1-1&nodeId=G2B9L3YR7LR8J4XP&qid=1635538830941&sr=1-.

[70] *Id.*

ii.     **Defendant Fails To Obtain Consumers' Affirmative
Consent To The Automatic Renewal Terms Associated
With The Amazon Subscriptions.**

52.     Second, with respect to each of the Amazon Subscriptions, Defendant does not at any point during the checkout process require consumers to read or affirmatively agree to any terms of service associated with their Amazon Subscriptions, *e.g.*, by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process. Accordingly, when Defendant automatically renews customers' Amazon Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

iii.    **Defendant Fails To Provide A Post-Checkout
Acknowledgment That Clearly And Conspicuously Discloses
The Required Amazon Subscription Offer Terms.**

53.     Finally, after Plaintiffs and the members of the Class subscribed to one of Defendant's Amazon Subscriptions, Defendant sent to Plaintiffs and the Class email follow-ups regarding their purchases (the "Acknowledgment Emails").

54.     By way of example, at least as of October 2021, consumers who enroll in Amazon Prime receive an email from Defendant upon completion of the checkout process. The subject line of the Acknowledgment Email Defendant sent to Amazon Prime subscribers (the "Amazon Prime Acknowledgment Email") stated: "[Subscriber Name], Welcome to Amazon Prime! Enjoy the best of shopping and entertainment." The body of the Amazon Prime Acknowledgment Email contained the following text and images (red boxes added to emphasize relevant terms):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21   55.   As the above images make clear, the Acknowledgment Emails for the Amazon

22  Subscriptions, like the corresponding Checkout Pages, do not clearly and conspicuously disclose

23  the continuous nature of the subscription or purchasing agreement, and they also fail to adequately

24  describe the complete cancellation policy associated with a consumer's given Amazon

25  Subscription.  Disclosures of required automatic renewal terms are either missing altogether, are

26  deceptively incomplete, objectively inaccurate, and/or are inconspicuously buried in the tiny, grey

27  fine print at the bottom of the email.  For example, the only mention on the Acknowledgment

28  Email shown above of the recurring price to be charged in connection with Amazon Prime occurs

in this block of fine print.  In other words, the disclosure was presented in such a way that it could be, and was (*e.g.*, by Plaintiff Nacarino, as alleged below), easily overlooked, and is therefore not "clear and conspicuous" as defined by Section 17601(c) of the ARL.  Moreover, the recurring monthly price listed is $12.99, but, as discussed below, the actual recurring monthly price charged to Ms. Nacarino's and other California consumers' Payment Methods in connection with Amazon Prime was $14.09, which includes the full membership fee *and applicable fees and taxes*.  Thus, even had this required automatic renewal offer term been conspicuously disclosed in the Acknowledgment Email (it was not), the disclosure as written provides false information, and Ms. Nacarino and California consumers still would not have been placed on notice of the actual recurring price to be charged in connection with Amazon Prime.

56.     Therefore, the Amazon Prime Acknowledgment Email does not adequately disclose the Amazon Prime "Automatic renewal offer terms" as that term is defined by Section 17601(b) of the ARL, in violation of Sections 17602(a)(1) of the ARL.  Further, the Amazon Prime Acknowledgment Email, like the other Amazon Acknowledgment Emails shown below, fails to provide a clear, conspicuous, and complete description of Defendant's complete cancellation policy and of how to cancel, in violation of both Sections 17602(a)(3) and 17602(b) of the ARL.

57.     Additionally, at least as of December 2020, the subject line of the Acknowledgment Email that Defendant sent to consumers who enrolled in a straight-to-paid Amazon Music Unlimited Subscription (the "Amazon Music Unlimited Acknowledgment Email") stated: "Welcome to Amazon Music Unlimited[.]"  The body of the Email contained the following text and images (red box added to emphasize relevant terms):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      58.     Similarly, at least as of October 2021, when consumers sign up for a *free trial*

17  subscription to Amazon Music Unlimited, (rather than a straight-to-paid subscription, as shown in

18  the example above), Defendant sent subscribers a nearly identical Acknowledgment Email

19  featuring substantially the same disclosures buried in tiny grey font at the bottom of the email (red

20  box added to screenshot for emphasis):

> Your subscription to Amazon Music Unlimited has started. Your subscription costs $0.00 for the first 3 months and then $7.99 per month after, plus any taxes and will be charged to your default card or another card on file. Your subscription renews monthly after the introductory offer. Cancel renewal anytime. Review your subscription by visiting Amazon Music settings. **The renewal price above may not reflect any promotions applied to your account**, which can be viewed by visiting Amazon Music settings. For more details, read our Amazon Music Terms of Use.

21
22
23

24      59.     Further, at least as of June 2021, the Acknowledgment Email Defendant sent to

25  Audible subscribers is nearly identical, and substantively no better.  The subject line of the

26  Audible Acknowledgment Email stated: "Welcome to Audible Premium Plus!"  The body of the

27  Audible Acknowledgment Email contained, in relevant part, the following text, in very small font

28  at the end of the email (red box added to screenshot for emphasis):

Your paid membership begins today, or at the end of your trial period, as applicable. It continues until cancelled for $14.95 a month + taxes (subject to any applicable promotions or discounts that may be applied). Your plan gives you 1 credit. Credits can be kept for a year before they expire. Cancel or switch your membership anytime by visiting your Account Details page. Please note: if you cancel, you will lose any remaining credits, your access to exclusive deals and discounts, and you'll no longer be able to stream titles included in the Audible Plus Catalog. Your membership is subject to Audible's Conditions of Use. If we are unable to charge your default card, we will use another card in your Amazon account as back up. Manage payment settings >

60.     As with the Checkout Pages, the Amazon Acknowledgment Emails – including but not limited to the Acknowledgment Emails shown above for Amazon Prime, Amazon Music Unlimited, and Audible[71] – failed to provide Plaintiffs and members of the Class with the complete automatic renewal or continuous service terms that applied to the offer, a description of the full cancellation policy, or any specific information regarding how to cancel.

61.     Namely, the Acknowledgment Emails for Amazon Music Unlimited, Audible, and other all Amazon Subscriptions beyond Amazon Prime suffer the same deficiencies as those pre-checkout disclosures featured on the relevant portion of the Amazon Subscription Checkout Pages, discussed above.  For instance, although the purchase confirmations for Amazon Music Unlimited and Audible contain *some* language regarding the continuous nature of the subscription, the recurring price to be charged, and cancellation like that on the Amazon Platform, given that such disclosures are buried at the bottom of the Emails in tiny font (*i.e.*, hidden in the fine print), the Acknowledgment Emails, like the Checkout Pages, do not provide this information in a clear and conspicuous manner as the ARL requires.  Nor is the information provided regarding cancellation comprehensive.  For instance, the Acknowledgment Emails above do not specify that subscribers must not use any benefits prior to cancellation or that cancellation must be affected prior to the next charge to the consumer, as is set forth on other pages of the Amazon Platform that Plaintiffs and Class Members were neither required nor prompted to view.  As such, the Acknowledgment Emails shown above fail to provide a description of Defendant's complete cancellation policy, in violation of both Sections 17602(a)(3) and 17602(b) of the ARL.

62.     By and through these actions, Defendant has charged Plaintiffs' and Class

---

[71] The Acknowledgment Emails for Amazon Prime Video, Amazon Prime Video Channels, Kindle Unlimited, Amazon Photos, Amazon Prime Book Box, Amazon Kids+, and all other subscription offerings available through the Amazon Platform are substantially similar to the Amazon Prime, Amazon Music Unlimited, and Audible Acknowledgment Emails shown above.

1    members' Payment Methods in direct violation of the ARL.  As a result, all goods, wares,

2    merchandise, and/or products sent to Plaintiffs and the Class upon the automatic renewal of their

3    continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. &

4    Prof. Code § 17603.

5        63.    Plaintiffs bring this action individually and on behalf of similarly situated

6    individuals against Defendant for conversion, unjust enrichment, negligent misrepresentation, and

7    fraud.  Plaintiffs also bring this action against Defendant for violations of California's Unfair

8    Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., among other consumer

9    protection statutory and common law claims asserted below.  As set forth in detail below,

10   Plaintiffs' UCL claims, which are based on, *inter alia*, Defendant's failure to comply with the

11   ARL, arise under the "unlawful" prong of the UCL.

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

### A.    Plaintiff Elena Nacarino

14       64.    Plaintiff Elena Nacarino is an individual consumer who signed up for an Amazon

15   Prime subscription on a free trial basis from Defendant's website while in California at some point

16   during approximately late 2019 or early 2020.  At the time Ms. Nacarino signed up for her

17   Amazon Subscription, she provided her Payment Method directly to Defendant.

18       65.    Before Ms. Nacarino purchased her Amazon Subscription, Defendant did not

19   disclose to Ms. Nacarino all required automatic renewal offer terms associated with the

20   subscription program.  Additionally, although the Checkout Page from which Ms. Nacarino made

21   her purchase included some relevant information regarding automatic renewal, the manner in

22   which this information was presented was insufficient to put Ms. Nacarino on notice.  Specifically,

23   prior to completing her initial Amazon Subscription order, the relevant screens and buttons

24   presented to Ms. Nacarino did not clearly and conspicuously state that her Amazon Subscription

25   would automatically renew every month until she cancelled; they did not state the recurring

26   charges that would be charged to Ms. Nacarino's Payment Method as part of the automatic

27   renewal plan, explain that the amount of the charge would change, or disclose the amount to which

28   the charge would change; and they did not describe the full cancellation policy that applied to her

1    purchase.

2         66.    At no point prior to completing her initial purchase did Defendant obtain Ms.

3    Nacarino's affirmative consent to an agreement containing the automatic renewal offer terms.

4         67.    After Ms. Nacarino completed her initial order, Defendant sent Ms. Nacarino an

5    Acknowledgment Email stating that her Amazon Subscription had been activated.  However, as

6    discussed above, that Acknowledgment Email failed to provide Ms. Nacarino with the complete

7    automatic renewal terms that applied to Defendant's offer, a description of Defendant's full

8    cancellation policy, or information regarding how to cancel Ms. Nacarino's Amazon Subscription

9    in a manner capable of being retained by her.  Ms. Nacarino did not receive any other

10   acknowledgments that contain the required information.

11        68.    As a result of Defendant's missing and otherwise deficient disclosures, when Ms.

12   Nacarino selected and enrolled in her Amazon Prime free trial subscription, she was unaware that

13   Defendant had enrolled her in an "automatic renewal" program under which her subscription

14   would renew each month and result in continuous monthly automatic renewal charges to her

15   Payment Method unless and until Ms. Nacarino canceled the subscription.

16        69.    Nevertheless, shortly after Ms. Nacarino first signed up for her free trial to Amazon

17   Prime, Defendant automatically renewed Ms. Nacarino's Amazon Prime Subscription and charged

18   Ms. Nacarino's Payment Method approximately $14.09, the full monthly standard membership fee

19   then associated with the paid monthly Amazon Prime Subscription (including applicable taxes and

20   fees[72]), without her knowing or affirmative consent.

21        70.    The monthly fee(s) that Defendant charged to Ms. Nacarino's Payment Method in

22   connection with her Amazon Prime subscription came as a surprise to Ms. Nacarino because, up

23   until that point, she was unsure of how long her free trial would last or when, if ever, the first

24   charge would occur following the conclusion of her free trial.  She believed that Amazon would

25   inform her following the expiration of the free trial period and, at that point, obtain her consent to

26   continued monthly charges in connection with Amazon Prime if she wished to continue with the

---

[72] Excluding taxes and fees, the monthly price of Plaintiff Nacarino's Amazon Prime Subscription was $12.99, as is listed in the fine print at the bottom of the exemplar Amazon Prime Checkout Page and Acknowledgment Email shown above, *see supra* ¶¶ 44, 54.

paid subscription.  As a result, because Ms. Nacarino was under the impression that she had more time to test out the service and decide whether it was worth paying for on an ongoing basis, she had not expected to incur any renewal fee at the time Defendant posted it to Ms. Nacarino's Payment Method.

71.     Ms. Nacarino was unaware of the recurring price that would be charged in connection with Amazon Prime until, upon review of the account banking history associated with her Payment Method, she saw the monthly charges on her Payment Method, at which point the free trial had already ended and the automatic charges had already begun.

72.     Ms. Nacarino's confusion and surprise about price and billing date is the direct result of Defendant's failure to place Ms. Nacarino on notice of the length of the free trial period and of the recurring amount that would be charged to Ms. Nacarino's Payment Method as part of her Amazon Subscription.  Specifically, this information was buried in the fine print on both the Checkout Page and the Acknowledgment Email as noted above (*see supra* ¶ 44 (screenshot Amazon Prime Checkout Page); *id.* ¶¶ 49-50 (discussing same); *id.* ¶ 54 (screenshot Amazon Prime Acknowledgment Email); *id.* ¶¶ 55-56 (discussing same)), and was therefore presented in such a way that the term could be – and, by Plaintiff Nacarino, was – easily overlooked, and is therefore not "clear and conspicuous" as defined by Section 17601(c) of the ARL.

73.     Moreover, even though, as Ms. Nacarino ultimately discovered, Defendant withdrew $14.09 from Ms. Nacarino's Payment Method on a monthly basis in connection with her Amazon Prime subscription, the Checkout Page that Ms. Nacarino and all Prime subscribers viewed during the enrollment process, as well as the Acknowledgment Email that Ms. Nacarino and all Prime subscribers received following enrollment, both indicate – in the easily-overlooked fine print – that the recurring price to be charged in connection with a monthly Amazon Prime Subscription would be $12.99.  Thus, even had the Acknowledgment Email presented this amount, the supposed recurring price to be charged in connection with the Prime automatic renewal program, "clearly and conspicuously" as the ARL requires, *see* Cal. Bus. & Prof. Code § 17602(a)(1); Cal. Bus. & Prof. Code § 17601(b)(3); Cal. Bus. & Prof. Code § 17601(c).

74.     Because Defendant failed to disclose this material information in the manner

required by statute, Ms. Nacarino was unable at the point of sale to accept Defendant's offer or knowingly enter into to the purchase agreement.

75.     At the time of and following enrollment in her free trial to Amazon Prime in or around late 2019 or early 2020, Ms. Nacarino did not expect that, once the free trial ended, Defendant would automatically post subscription fees to her Payment Method on a monthly basis without further confirmation on her part.  Even so, fearful of hidden fees and surprise charges, Ms. Nacarino decided to cancel her Amazon Prime subscription prior to the end of the free trial period associated with her Amazon Subscription – or, rather, prior to what *Ms. Nacarino believed to be* the end of the free trial period – in order to avoid incurring any potential future charges that may be associated with Amazon Prime.  But once she set out to affect cancellation, Ms. Nacarino was not sure where to start.  Due to this lack of clarity, the process was not timely.  Thus, Ms. Nacarino struggled to affect cancellation due to Defendant's obscured, confusing, and time-consuming cancellation policy.

76.     Ultimately, Ms. Nacarino attempted to cancel her Amazon Subscription through options she found on the Account Management webpage of the Amazon Website.  Once Ms. Nacarino completed this process, she believed that this attempt at cancellation was effective, and that she would not incur any future charges in connection with Amazon Prime.  However, approximately one or two months later, Ms. Nacarino learned upon review of her billing statements and banking history that, notwithstanding her attempt to cancel her free trial to Amazon Prime, Defendant automatically renewed Ms. Nacarino's Amazon Subscription upon the end expiration of the free trial period and, without Ms. Nacarino's affirmative consent, charged Ms. Nacarino's Payment Method in the full standard monthly rate associated with her Amazon Subscription.  Thus, Ms. Nacarino's attempt at cancellation one month earlier was utterly ineffective.

77.     Immediately after learning of Defendant's renewal charge(s) to her Payment Method, Ms. Nacarino again attempted to cancel her Amazon Subscription.  Since Ms. Nacarino's first attempt to cancel using Defendant's exclusively online cancellation mechanism on the Amazon Website was not effective, for her second attempt Ms. Nacarino attempted to cancel by

phone.  Accordingly, Ms. Nacarino called to notify Defendant that she did not authorize – and to request a refund of – the unauthorized subscription charge(s) that Defendant had charged Ms. Nacarino's Payment Method.  She also asked Defendant to remove Ms. Nacarino's billing information, which Defendant had stored and maintained in its records, and expressly stated that Defendant did not have authorization to post any further charges.  However, Defendant denied Ms. Nacarino's refund request because, according to Defendant, Ms. Nacarino had failed to cancel her Amazon Prime Subscription and request a refund in the required time frame, and Defendant also refused to cancel her Amazon Subscription before the end of the given renewal term.

78.    As a result, Ms. Nacarino learned of other aspects of Defendant's cancellation policy that Defendant had failed to present to Ms. Nacarino on the Checkout Page at the point of sale or in the subsequent Acknowledgment Email.  For instance, neither the Checkout Page nor the Acknowledgment Email indicates that only members that "didn't use any Prime benefits" can be refunded for the "current membership period," as is set forth elsewhere in the Amazon Website.[73]  Further, Defendant does not specify anywhere on the Checkout Page or in the Acknowledgment Email that customers must "notify [Amazon] before a charge that [they] want to cancel or do not want to auto renew" in order to avoid being automatically renewed and billed for the following billing period, as do terms set forth on other pages of Defendant's website.[74]

79.    Ultimately, Ms. Nacarino was only able to affect cancellation and thereby end the recurring charges with the help of her bank rather than through Amazon, by cancelling the debit and/or credit card associated with her Amazon Subscription.

80.    Ms. Nacarino was not previously aware of the above aspects of Defendant's cancellation policy.  At no point during her Amazon Subscription was Ms. Nacarino required or even prompted to navigate to or otherwise examine any of the terms disclosed on any other page of the Amazon Website, aside from the Checkout Page.  Defendant neglected to disclose this information to Ms. Nacarino either at the point of purchase on the Checkout Page or later in the

---

[73] https://www.amazon.com/gp/help/customer/display.html?nodeId=G34EUPKVMYFW8N2U.

[74] https://www.amazon.com/gp/help/customer/display.html?ref_=help_search_1-1&nodeId=G2B9L3YR7LR8J4XP&qid=1635538830941&sr=1-.

Acknowledgment Email that Defendant sent to Ms. Nacarino after she completed the checkout process.  Accordingly, Defendant failed to place Ms. Nacarino on notice of its cancellation policy or provide Ms. Nacarino information regarding how to cancel in a manner that is capable of being retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

81.     Moreover, even if the Acknowledgment Email *had* contained Defendant's complete cancellation policy (it did not), for the reasons stated above the "mechanism for cancellation" that exists is not one Ms. Nacarino and other reasonable consumers would consider "easy-to-use." Defendant therefore failed to provide Ms. Nacarino with an "easy-to-use mechanism for cancellation" or describe any such mechanism in an Acknowledgment Email, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3) and 17602(b).

82.     Defendant's pre- and post-purchase disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be an unconditional gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.

83.     As a direct result of Defendant's unlawful conduct described above, Ms. Nacarino suffered economic injury.  Specifically, Defendant's ARL violations caused Ms. Nacarino's financial injury because Ms. Nacarino reasonably relied on Defendant's conspicuous disclosures of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, the omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase her Amazon Subscription in the first place and whether to continue paying for it after that (*i.e.*, by not cancelling the auto-renewal).

84.     Had Defendant complied with the ARL by adequately disclosing – and obtaining Ms. Nacarino's affirmative consent to – the requisite Amazon Subscription terms on the Checkout Page at the point of Ms. Nacarino's initial purchase, Ms. Nacarino would have been able to read and review the auto renewal terms prior to purchase and she would have not subscribed to Amazon Prime in the first place, or would have subscribed on materially different terms, thereby avoiding financial injury of any kind as a result of Defendant's ARL violations.  Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with her Amazon Subscription in the post-checkout Acknowledgment Email (*i.e.*, after initial enrollment in Amazon

Prime, but before any subsequent automatic renewal charge of Ms. Nacarino's Payment Method), Ms. Nacarino would have been able to read and review the auto renewal terms prior to another automatic renewal, and she would have cancelled her Amazon Subscription prior to the expiration of the subscription period in which she learned such information, thereby avoiding all or part of the aggregate automatic renewal charges Ms. Nacarino incurred in connection with Amazon Prime from the time of enrollment in late 2019 or early 2020, to the present.  But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Page or the Acknowledgment Email, depriving Ms. Nacarino of the opportunity to make informed decisions as to the recurring transactions.

85.     The facts giving rise to Ms. Nacarino's claims are materially the same as the Class she seeks to represent.

**B.     Plaintiff Susan Sylvester**

86.     Plaintiff Susan Sylvester is an individual consumer who, by purchasing a Kindle Device, enrolled in a Kindle Unlimited subscription on a free trial basis from Defendant's website while in California in or around 2019.  The free trial began in or around August of 2019, and it lasted three months.  At the time Ms. Sylvester purchased her Kindle device and signed up for her Kindle Unlimited free trial subscription, she provided her Payment Method directly to Defendant.

87.     Before Ms. Sylvester purchased her Kindle Device, thereby purchasing her Amazon Subscription, Defendant did not disclose to Ms. Sylvester all required automatic renewal offer terms associated with the subscription program.  Additionally, although the Checkout Page from which Ms. Sylvester made her purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Ms. Sylvester on notice.  Specifically, prior to completing her initial Kindle Device order, the relevant screens and buttons presented to Ms. Sylvester did not clearly and conspicuously state that her free trial Amazon Subscription would automatically renew every month until she cancelled; they did not state the recurring charges that would be charged to Ms. Sylvester's Payment Method as part of the automatic renewal plan, explain that the amount of the charge would change, or disclose the amount to which the charge would change; and they did not describe the full cancellation policy

1    that applied to her purchase.

2          88.    At no point prior to completing her initial purchase did Defendant obtain Ms.

3    Sylvester's affirmative consent to an agreement containing the automatic renewal offer terms.

4          89.    After Ms. Sylvester completed her initial order, Defendant sent Ms. Sylvester an

5    Acknowledgment Email stating that her Kindle Device purchase had been successful.  However, as

6    discussed above, that Acknowledgment Email failed to provide Ms. Sylvester with the complete

7    automatic renewal terms of Kindle Unlimited that applied to Defendant's offer, a description of

8    Defendant's full cancellation policy, or information regarding how to cancel Ms. Sylvester's

9    Amazon Subscription in a manner capable of being retained by her.  Ms. Sylvester did not receive

10   any other acknowledgments that contain the required information.

11         90.    As a result of Defendant's missing and otherwise deficient disclosures, when Ms.

12   Sylvester purchased her Kindle Device and unwittingly enrolled in her Kindle Unlimited free trial

13   subscription, she was unaware that Defendant had enrolled her in an "automatic renewal" program

14   under which the subscription would renew and her Payment Method would be automatically

15   charged each month at varying rates unless and until Ms. Sylvester took action to affirmatively

16   cancel her subscription prior to the end of the free trial period.

17         91.    Nevertheless, in December of 2019, Defendant automatically renewed Ms.

18   Sylvester's Kindle Unlimited Subscription, converting her free trial to a paid monthly subscription,

19   and charged Ms. Sylvester's Payment Method in the amount of $9.99, the full standard monthly

20   rate then associated with the paid Kindle Unlimited subscription.  Thereafter, Defendant continued

21   to automatically renew Ms. Sylvester's Kindle Unlimited Subscription at the full standard rate on a

22   monthly basis and charged her Payment Method an additional twenty-four times, for a total of

23   twenty-five (25) unauthorized charges to Ms. Sylvester's Payment Method between December

24   2019 and the present, without Ms. Sylvester's knowing or affirmative consent.  As discussed

25   below, Defendant has refunded twelve (12) of the total twenty-five (25) monthly charges.  Even

26   after deducting refunded amounts, and as shown by the table below, Ms. Sylvester has sustained

27   financial injury in the sum total of at least $129.82 in unauthorized subscription fees posted to Ms.

28   Sylvester's Payment Method during the Class Period without her knowing or affirmative consent:

| Billing Date | Amount |
|---|---|
| 12/27/2019 | $9.99 |
| 01/27/2020 | $9.99 |
| 02/27/2020 | $9.99 |
| 03/27/2020 | $9.99 |
| 04/27/2020 | $9.99 |
| 05/27/2020 | $9.99 |
| 06/27/2020 | $9.99 |
| 07/27/2020 | $9.99 |
| 08/27/2020 | $9.99 |
| 09/27/2020 | $9.99 |
| 10/27/2020 | $9.99 |
| 11/27/2020 | $9.99 |
| 12/27/2020 | $9.99 |
| 01/27/2021 | $9.99 |
| 02/27/2021 | $9.99 |
| 03/27/2021 | $9.99 |
| 04/27/2021 | $9.99 |
| 05/27/2021 | $9.99 |
| 06/27/2021 | $9.99 |
| 07/27/2021 | $9.99 |
| 08/27/2021 | $9.99 |
| 09/27/2021 | $9.99 |
| 10/27/2021 | $9.99 |
| 11/27/2021 | $9.99 |
| 12/27/2021 | $9.99 |
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |

| 01/18/2022 | -$9.99 (refund) |
|---|---|
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| | **Total: $129.87** |

92.     During the course of her Amazon Subscription, Ms. Sylvester found Defendant's billing practices confusing and unpredictable.  As shown by the table above, Defendant charged twenty-five monthly fees to Ms. Sylvester's Payment Method from December 2019 to December 2021, for a total of $249.75, ***$129.87 of which Defendant refuses to return or refund***.

93.     The monthly renewal fees that Defendant charged to Ms. Sylvester's Payment Method came as a surprise to Ms. Sylvester because, up until that point, she was unsure how long her free trial would last.  As a result, because Ms. Sylvester was under the impression that she had more time to test out the service and decide whether it was worth paying for on an ongoing basis, she had not expected to incur any renewal fee at the time Defendant posted it to Ms. Sylvester's Payment Method.  Ms. Sylvester's confusion and surprise about price and billing date is the direct result of Defendant's failure to place Ms. Sylvester on notice of the length of the free trial period and of the recurring amount that would be charged to Ms. Sylvester's Payment Method as part of her Amazon Subscription.  Because Defendant failed to disclose this material information in the manner required by statute, Ms. Sylvester was unable at the point of sale to accept Defendant's offer or knowingly enter into to the purchase agreement.

94.     Frustrated with Defendant's hidden automatic renewal terms and fearful of hidden fees and surprise charges, Ms. Sylvester decided to cancel her Kindle Unlimited subscription once she realized the free trial period associated with her Amazon Subscription had expired, in order to avoid incurring any potential future charges that may be associated with Kindle Unlimited.  But once she set out to affect cancellation, Ms. Sylvester was not sure where to start.  Due to this lack of clarity, the mechanism for cancellation was neither "timely" nor "easy to use."  In other words, Ms. Sylvester struggled to affect cancellation, and incurred additional renewal fees, due to

Defendant's obscured, confusing, and time-consuming cancellation policy.

95.     Specifically, promptly after incurring her first charge in connection with Kindle Unlimited on December 27, 2019, Ms. Sylvester attempted to cancel her Amazon Subscription by calling Amazon's toll-free phone number in or around late December 2019.  On that occasion, Ms. Sylvester spoke with an Amazon customer service representative named "William," who assured Ms. Sylvester that, at Ms. Sylvester's direction, he had cancelled her subscription.  Following this phone call, Ms. Sylvester believed that her December 2019 attempt at cancellation was effective, and that she would not incur any future charges in connection with Kindle Unlimited.

96.     However, approximately eight months later, in or around August 2020, Ms. Sylvester learned upon review of her billing statements and banking history that, notwithstanding her attempt to cancel her free trial to Kindle Unlimited in December 2019, Defendant had automatically renewed Ms. Sylvester's Amazon Subscription upon the end expiration of the free trial period and, without Ms. Sylvester's affirmative consent, charged Ms. Sylvester's Payment Method in the amount of $9.99, the full standard monthly rate associated with her Amazon Subscription, on January 27, 2020, and every month thereafter leading up to August 2020.  Thus, Ms. Sylvester's December 2019 attempt at cancellation was utterly ineffective.

97.     Immediately after learning of Defendant's renewal charge(s) to her Payment Method, Ms. Sylvester again attempted to cancel her Amazon Subscription on or around August 11, 2020.  On this occasion Ms. Sylvester again attempted to cancel by phone.  Specifically, Ms. Sylvester called Defendant's toll-free phone number to notify Defendant that she did not authorize – and request a refund of – the unauthorized subscription charges that Defendant had charged Ms. Sylvester's Payment Method between December 2019 and July 2020.  During that phone call, Ms. Sylvester was assured by the Amazon customer service representative with whom she spoke in August of 2020 that her Kindle Unlimited Subscription would be cancelled, but her refund request was denied.  Furthermore, following the call, Ms. Sylvester received the below confirmation email regarding cancellation, in which Defendant specifically informed Ms. Sylvester that her "Kindle Unlimited membership will not renew.  At the end of [her] membership period, [her] Kindle Unlimited membership will not continue":

98.      Unfortunately for Ms. Sylvester, notwithstanding receipt of this cancellation confirmation email, thereafter Ms. Sylvester continued to receive monthly renewal charges in connection with her Kindle Unlimited Subscription.  Indeed, Ms. Sylvester subsequently learned, upon review of the account banking history associated with her Payment Method, that following her August 2020 cancellation attempt Defendant had once again automatically renewed Ms. Sylvester's Kindle Unlimited Subscription later that same month and, without Ms. Sylvester's authorization (and, indeed, despite her express denial of such authorization), charged Ms. Sylvester's Payment Method another monthly renewal fee for the following billing cycle, in the amount of $9.99 on August 27, 2020.  Thus, Ms. Sylvester's August 2020 cancellation attempt was ultimately ineffective.

99.      Thereafter, Defendant continued to post automatic renewal charges to Ms. Sylvester's Payment Method every month until December of 2021.  Following the December 2021 charge, Ms. Sylvester became aware of the continuing renewal charges she had incurred after her August 2020 cancellation attempt, and she again attempted – successfully, this time – to cancel her subscription in in or around January of 2022.  Confused and angered by Defendant's deception, Ms. Sylvester called Defendant's customer service phone number *for the third time* in January

2022 to notify Defendant that she had not authorized the subscription charges that were posted to Ms. Sylvester's Payment Method on a monthly basis since December 2019, and to insist on a refund of those unauthorized charges.

100.    When Ms. Sylvester reached out to Defendant by phone in January 2022, Defendant finally cancelled Ms. Sylvester's Kindle Unlimited subscription, and the monthly renewal charges ceased.  However, by that point, the damage was done: Ms. Sylvester had already suffered substantial economic loss as a result of Defendant's omissions of automatic renewal terms and, correspondingly, the twenty-five months of unauthorized charges that Defendant posted to Ms. Sylvester's Payment Method in connection with the Kindle Unlimited Subscription.

101.    Additionally, following Ms. Sylvester's initial January 2022 phone call and several subsequent email exchanges and follow-up calls with an Amazon customer service representative named "Amit G," Defendant agreed to issue a refund of no more than twelve of the twenty-five total months of renewal charges that Ms. Sylvester incurred in connection with Kindle Unlimited, and accordingly returned $119.88 of the total amount to Ms. Sylvester's Payment Method (half of which posted to Ms. Sylvester's bank account on January 10, 2022, and the other half of January 18, 2022).  However, Defendant continued, and to this day continues, to refuse to issue Ms. Sylvester a complete refund for all twenty-five months of unauthorized charges.  Thus, thirteen months of unauthorized subscription charges posted to Ms. Sylvester's Payment Method since December 2019 in connection with Kindle Unlimited remain unrefunded to this day, amounting to a total of $129.87 in financial injury to Ms. Sylvester as a direct result of Defendant's unlawful conduct.

102.    Ms. Sylvester was not previously aware of the above aspects of Defendant's cancellation policy.  At no point during her Amazon Subscription was Ms. Sylvester required or even prompted to navigate to or otherwise examine any of the terms disclosed on any other page of the Amazon Website, aside from the Checkout Page.  Defendant neglected to disclose this information to Ms. Sylvester either at the point of purchase on the Checkout Page or later in the Acknowledgment Email that Defendant sent to Ms. Sylvester after she completed the checkout process for her Kindle Device.  Accordingly, Defendant failed to place Ms. Sylvester on notice of

1    its cancellation policy or provide Ms. Sylvester information regarding how to cancel in a manner

2    that is capable of being retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

3           103.    Moreover, even if the Acknowledgment Email *had* contained Defendant's complete

4    cancellation policy (it did not), for the reasons stated above the "mechanism for cancellation" that

5    exists is not one Ms. Sylvester and other reasonable consumers would consider "easy-to-use."

6    Defendant therefore failed to provide Ms. Sylvester with an "easy-to-use mechanism for

7    cancellation" or describe any such mechanism in an Acknowledgment Email, in violation of Cal.

8    Bus. & Prof. Code §§ 17602(a)(3) and 17602(b).

9           104.    Defendant's pre- and post-purchase disclosures fail to comply with the ARL, which

10   deems products provided in violation of the statute to be an unconditional gift to consumers.  *See*

11   Cal. Bus. & Prof. Code § 17603.

12          105.    As a direct result of Defendant's unlawful conduct described above, Ms. Sylvester

13   suffered economic injury.  Specifically, Defendant's ARL violations caused Ms. Sylvester's

14   financial injury because Ms. Sylvester reasonably relied on Defendant's conspicuous disclosures

15   of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, the omissions

16   and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase

17   her Kindle Device, and thereby, her Amazon Subscription in the first place and whether to

18   continue paying for it after that (*i.e.*, by not cancelling the auto-renewal).

19          106.    Had Defendant complied with the ARL by adequately disclosing – and obtaining

20   Ms. Sylvester's affirmative consent to – the requisite Amazon Subscription terms on the Checkout

21   Page at the point of Ms. Sylvester's initial purchase in or around July 2019, Ms. Sylvester would

22   have been able to read and review the auto renewal terms prior to purchase and she would have not

23   subscribed to Kindle Unlimited in the first place, or would have subscribed on materially different

24   terms, thereby avoiding financial injury of any kind as a result of Defendant's ARL violations.

25   Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated

26   with her Amazon Subscription in the post-checkout Acknowledgment Email (*i.e.*, after initial

27   enrollment in Kindle Unlimited, but before any subsequent automatic renewal charge of Ms.

28   Sylvester's Payment Method), Ms. Sylvester would have been able to read and review the auto

renewal terms prior to another automatic renewal, and she would have cancelled her Amazon Subscription prior to the expiration of the subscription period in which she learned such information, thereby avoiding all or part of the aggregate automatic renewal charges Ms. Sylvester incurred in connection with Kindle Unlimited from the time of enrollment in 2019 to January 2022.  But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Page or the Acknowledgment Email, depriving Ms. Sylvester of the opportunity to make informed decisions as to the recurring transactions.

107.   The facts giving rise to Ms. Sylvester's claims are materially the same as the Class she seeks to represent.

**C.   Plaintiff Michael Sonnenschein**

108.   Plaintiff Michael Sonnenschein is an individual consumer who signed up for an Amazon Music Unlimited subscription on a free trial basis from Defendant's website while in California on or around October 31, 2017.  Additionally, Mr. Sonnenschein signed up for a Amazon Prime Video Channel subscription to "Shudder" (together with Music Unlimited, Mr. Sonnenschein's "Amazon Add-On Subscriptions") on a free trial basis from Defendant's website while in California on or around October 15, 2019.[75]

109.   At the time Mr. Sonnenschein purchased his Amazon Add-On Subscriptions, Defendant did not disclose to Mr. Sonnenschein all required automatic renewal offer terms associated with the subscription programs.  Additionally, although the Checkout Pages from which Mr. Sonnenschein made his purchases included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Mr. Sonnenschein on notice.  Specifically, prior to completing his initial Amazon Add-On

---

[75] Unbeknownst to him, Mr. Sonnenschein signed up for his monthly Shudder and Music Unlimited subscriptions as *add-ons* to his base Amazon Prime subscription, in which he had already enrolled on a distinct occasion at an earlier time.  At the time Mr. Sonnenschein originally signed up for his base Prime subscription (i.e., prior to his enrollment in Music Unlimited and Shudder), he provided his Payment Method directly to Defendant.  As a result, Mr. Sonnenschein's Payment Method was already stored and maintained in Amazon's records when he later signed up for his Amazon Add-On Subscriptions, which he believed to be standalone free trials that were unconnected to his base Amazon Prime Subscription and that would naturally conclude upon expiration of the trial period and would not result in any subsequent charges to Mr. Sonnenschein's Payment Method without his express authorization.

Subscriptions orders, the relevant screens and buttons presented to Mr. Sonnenschein did not clearly and conspicuously state that his Amazon Add-On Subscriptions would automatically renew every month until he cancelled; they did not state the recurring charges that would be charged to Mr. Sonnenschein's Payment Method as part of the automatic renewal plans, explain that the amount of the charges would change, or disclose the amount to which the charges would change; and they did not describe the full cancellation policies that applied to his purchases.

110.    At no point prior to completing his initial purchases did Defendant obtain Mr. Sonnenschein's affirmative consent to any agreement containing the automatic renewal offer terms associated with the Amazon Add-On Subscriptions.

111.    After Mr. Sonnenschein completed his initial orders, Defendant sent Mr. Sonnenschein Acknowledgment Emails stating that his Amazon Add-On Subscriptions had been activated.  However, as discussed above, that Acknowledgment Emails failed to provide Mr. Sonnenschein with the complete automatic renewal terms that applied to Defendant's offers, a description of Defendant's full cancellation policies, or information regarding how to cancel Mr. Sonnenschein's Amazon Subscriptions in a manner capable of being retained by him.  Mr. Sonnenschein did not receive any other acknowledgments that contain the required information.

112.    As a result of Defendant's missing and otherwise deficient disclosures, when Mr. Sonnenschein selected and enrolled in his free trials to the Amazon Add-On Subscriptions, he was unaware that Defendant had enrolled him in "automatic renewal" programs under which his subscriptions would renew each month and result in continuous monthly automatic renewal charges to his Payment Method unless and until Mr. Sonnenschein took action to affirmatively cancel the subscriptions.

### *Amazon Music Unlimited*

113.    Nevertheless, on November 30, 2017, approximately one month after Mr. Sonnenschein first signed up for his free trial to Music Unlimited, Defendant automatically renewed Mr. Sonnenschein's Music Unlimited Subscription and charged Mr. Sonnenschein's Payment Method in the amount of $7.99, the full standard monthly rate then associated with Amazon's paid Music Unlimited subscription.  Thereafter, Defendant continued to automatically

renew Mr. Sonnenschein's Music Unlimited Subscription at the full standard rate on a monthly

basis, charging his Payment Method an additional seven times, for a total of eight unauthorized

charges to Mr. Sonnenschein's Payment Method between October 2017 and June 2018, without

Mr. Sonnenschein's knowing consent.  During this period, Defendant charged, in connection with

Amazon Music Unlimited, a total of at least $63.92 in unauthorized renewal fees to Mr.

Sonnenschein's Payment Method without his knowing or affirmative consent:

| Billing Date | Amount |
|---|---|
| 10/31/2017 | $0.99 |
| 11/30/2017 | $7.99 |
| 12/30/2017 | $7.99 |
| 01/30/2018 | $7.99 |
| 02/30/2018 | $7.99 |
| 03/30/2018 | $7.99 |
| 04/30/2018 | $7.99 |
| 05/30/2018 | $7.99 |
| 06/30/2018 | $7.99 |
| | **Total: $63.92** |

114.    Mr. Sonnenschein did not learn of the above-listed monthly charges until after

incurring the final monthly charge at the end of June 2018, upon review of the account banking

history associated with his Payment Method several months after initial enrollment in his free trial

to Music Unlimited.  Prior to this point, Mr. Sonnenschein did not expect, and thus did not become

aware of, the unauthorized monthly charges.  In other words, Mr. Sonnenschein first discovered

Defendant's continuing course of unlawful conduct in or around late June or early July of 2018.

Immediately upon becoming aware of such charges, Mr. Sonnenschein took prompt action to

cancel his Music Unlimited Subscription.  However, as shown above, this realization came too late

for Mr. Sonnenschein to avoid financial injury as a result of Defendant's pre- and post-purchase

omissions of required terms under the ARL.

***Amazon Prime Video Channel Subscription (Shudder)***

115.     Furthermore, on August 29, 2020 – approximately *ten and a half months* after Mr. Sonnenschein first signed up for his free trial to the "Shudder" Prime Video Channel on or around October 15, 2019 – Defendant automatically renewed Mr. Sonnenschein's Shudder subscription and charged Mr. Sonnenschein's Payment Method in the amount of $5.99, the full standard monthly rate then associated with Amazon's paid monthly Shudder Prime Video Channel subscription.  Thereafter, on or around September 29, 2020, Defendant again automatically renewed Mr. Sonnenschein's Shudder subscription at the full standard rate for the subsequent month without his knowing consent.  Thus, between October 15, 2019 and September 29, 2020, Defendant charged, in connection with his Shudder Prime Video Channel subscription, a total of at least $11.98 in unauthorized renewal fees to Mr. Sonnenschein's Payment Method without his knowing or affirmative consent:

| Billing Date | Amount |
|:---:|:---:|
| 10/15/2019 | $0.00 |
| 08/29/2020 | $5.99 |
| 09/29/2020 | $5.99 |
|  | **Total: $11.98** |

116.     Following initial enrollment in his free trial to Shudder in October of 2019, Mr. Sonnenschein did not expect and thus did not become aware of the unauthorized renewal charges Defendant had been posting to his Payment Method on a monthly basis, until after he incurred the second monthly charge in or around September 2020.  Upon becoming aware of such charges, Mr. Sonnenschein promptly took action to cancel his Shudder Subscription.  However, as shown above, this realization came too late for Mr. Sonnenschein to avoid financial injury.

117.     Mr. Sonnenschein's confusion and surprise with respect to Defendant's billing practices during the life of his Amazon Add-On Subscriptions is the direct result of Defendant's failure to place Mr. Sonnenschein on notice of the recurring nature of his Music Unlimited and Shudder Subscriptions, along with other pertinent and required automatic renewal offer terms. Because Defendant failed to disclose this material information in the manner required by statute,

Mr. Sonnenschein was unable at the point of sale to accept Defendant's offers or knowingly enter into the purchase agreements.

118.    Defendant's pre- and post-purchase disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be an unconditional gift to consumers. *See* Cal. Bus. & Prof. Code § 17603.

119.    As a direct result of Defendant's unlawful conduct described above, Mr. Sonnenschein suffered economic injury.  Specifically, Defendant's ARL violations concerning the Amazon Add-On Subscriptions caused Mr. Sonnenschein's financial injury because Mr. Sonnenschein reasonably relied on Defendant's conspicuous disclosures of the Checkout Pages and the Acknowledgment Emails (and, as a natural corollary, the omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase his Amazon Subscriptions in the first place and whether to continue paying for them after that (*i.e.*, by not cancelling the auto-renewal).

120.    Had Defendant complied with the ARL by adequately disclosing – and obtaining Mr. Sonnenschein's affirmative consent to – the requisite Amazon Subscription terms on the Checkout Pages at the point of Mr. Sonnenschein's initial purchase in or around 2019, Mr. Sonnenschein would have been able to read and review the auto renewal terms prior to purchase and he would have not subscribed to Amazon's Music Unlimited or Prime Video Channel Subscriptions in the first place, or would have subscribed on materially different terms, thereby avoiding financial injury of any kind as a result of Defendant's ARL violations.  Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with his Amazon Subscriptions in the post-checkout Acknowledgment Emails (*i.e.*, after initial enrollment in each Amazon Subscription, but before any subsequent automatic renewal charge of Mr. Sonnenschein's Payment Method), Mr. Sonnenschein would have been able to read and review the auto renewal terms prior to another automatic renewal, and he would have cancelled his Amazon Subscriptions prior to the expiration of the subscription periods in which he learned such information, thereby avoiding all or part of the aggregate automatic renewal charges Mr. Sonnenschein incurred in connection with each Amazon Subscription from the time of his enrollment in 2017 to the present.

But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Pages or the Acknowledgment Emails, depriving Mr. Sonnenschein of the opportunity to make informed decisions as to the recurring transactions.

121.    The facts giving rise to Mr. Sonnenschein's claims are materially the same as the Class he seeks to represent.

## CLASS ACTION ALLEGATIONS

122.    ***Class Definition***: Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a class action pursuant to Federal Rule of Civil Procedure 23.  The classes Plaintiffs seek to represent are defined as follows:

> All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred renewal fee(s) in connection with Defendant's YouTube TV, YouTube Music, and YouTube Premium subscription offerings.

123.    Specifically excluded from the Class are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

124.    Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

125.    ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, the Class comprises at least millions of consumers throughout California.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

126.    ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's Amazon Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof.

Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiffs' and Class members' Payment Method for an automatic renewal or continuous service without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiffs and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (g) whether Defendant's conduct alleged herein constitutes conversion, unjust enrichment, negligent misrepresentation, and/or fraud; (h) whether Plaintiffs and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiffs and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

127.    ***Typicality.***  The claims of Plaintiffs are typical of the claims of the Class in that Plaintiffs and members of the proposed Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiffs' and the Class's affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the Amazon Subscriptions before charging their Payment Methods.

128.    ***Adequacy***.  Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests, and Plaintiffs have retained counsel that have considerable experience and success in prosecuting complex class-actions and

consumer-protection cases.

129.    ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

130.    Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

131.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiffs and members of the Class and will likely retain the benefits of its wrongdoing.

132.    Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

**<u>COUNT I</u>**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

133.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

134.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

135.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]"  Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

136.    As alleged in more detail below, Amazon's acts and practices alleged herein are "unlawful" within the meaning of the UCL because they violated the following laws, regulations,

and rules, including the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, as well as the CLRA, FAL, and all other consumer protection statutes and common laws as asserted in Counts II through VII below.

Violations of California's Automatic Renewal Law

137.    Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*, as alleged in the above paragraphs of this complaint, which are incorporated herein by reference.

138.    Specifically, Defendant failed, and continues to fail, to:  (a) provide the auto-renewal terms associated with its Amazon Subscriptions "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiffs and the Class to those terms before charging their Payment Methods, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Amazon Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

139.    Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

140.    All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603.

141.    As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiffs and the Class in the form of payments made by Plaintiffs and the Class for their Amazon Subscriptions.  Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.  Thus,

Plaintiffs have suffered injury in fact and lost money or property as a result of Amazon's violations of California's ARL.

142.    Amazon was prohibited from making these charges and taking Plaintiffs' money without the required affirmative consent.  If Amazon had complied with the law, Amazon could not have made the charges, and would not have obtained this money from Plaintiffs.

Violations of Other Statutes and Common Laws

143.    Furthermore, as alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiffs and the Class.

144.    Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

145.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

146.    Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

147.    Plaintiffs and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to purchase the Amazon Subscriptions.  Had Defendant complied with its disclosure obligations under the ARL, Plaintiffs and members of the Class would not have purchased their Amazon Subscriptions or would have cancelled their Amazon Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  Thus, Plaintiffs and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

148.    Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Amazon Subscriptions are still used by Defendant today.

149.    Plaintiffs and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiffs' and the Class's Payment Methods in connection with their Amazon Subscriptions during the four years preceding the filing of this Complaint.  Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiffs and the Class, from whom they were unlawfully taken.

150.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

151.    Plaintiffs, individually and on behalf of similarly situated California consumers, bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest.  Plaintiffs and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

## COUNT II
### Conversion

152.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

153.    Plaintiffs brings this claim individually and on behalf of the members of the proposed Class against Defendant.

154.    As a result of charges made by Defendant to Plaintiffs' and Class members' Payment Methods without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiffs and the Class.

155.    The amount of money wrongfully taken by Defendant is capable of identification.

156.    Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

157.    As a result of Defendant's actions, Plaintiffs and the Class have suffered damages.

## COUNT III
### Violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

158.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

159.    Plaintiffs brings this claim individually and on behalf of the members of the proposed Class against Defendant.

160.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

161.    Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

162.    Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's Amazon Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  For instance, Defendant's representation on the Checkout Pages of the Amazon Website that members can

"cancel [their Amazon Subscriptions] anytime" is contradicted by their policy set forth elsewhere in the Amazon Website that customers must cancel their Amazon Subscriptions prior to the next charge. In light of Defendant's disclosure of the former and silence as to the latter on the Checkout Pages for the Amazon Subscriptions, the representations and omissions on the Checkout Pages constitute false and deceptive advertisements.

163.    Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

164.    Plaintiffs and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their Amazon Subscriptions, and other California consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiffs and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's Amazon Subscription. They relied on Defendant's statements and omissions to their detriment.

165.    Plaintiffs and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the Amazon Subscriptions on the same terms if the true facts were known about the product and the Amazon Subscriptions do not have the characteristics as promised by Defendant.

166.    Plaintiffs, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

### COUNT IV
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***

167.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the

preceding paragraphs as though alleged in this Count.

168.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

169.   Plaintiffs and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiffs and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

170.   Defendant's selection and/or subscription offers and the video, music, and other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b).  The purchases by Plaintiffs and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

171.   The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the Class as described herein, and have resulted, and will result, in damages to Plaintiffs and the Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the Amazon Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

172.   Plaintiffs and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase Amazon Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid.  Had Defendant fully and clearly disclosed the terms associated with the Amazon Subscriptions, Plaintiffs and the Class would have not subscribed to the Amazon Subscriptions, or they would have cancelled their Amazon Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

173.   Plaintiffs, on behalf of themselves and all other members the Class, seek an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

174.   In compliance with the provisions of California Civil Code § 1782, Plaintiff Nacarino sent written notice to Defendant on September 8, 2021, informing Defendant of her

intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, and advised Defendant that it was in violation of the CLRA and demanded that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  A true and correct copy of the letter is attached hereto as **Exhibit A**.  The letter was delivered to Defendant on September 13, 2021, as reflected by the proof of delivery issued by the United States Postal Service, a true and correct copy of which is attached hereto as **Exhibit B**.  Defendant did not take action to rectify the injuries caused by their unlawful conduct as described in the 9/8/21 letter and above on a class-wide basis within 30 days of receipt of the letter.  Accordingly, Plaintiffs Nacarino, Sylvester, and Sonnenschein, individually and on behalf of the proposed Class, seek monetary damages from Defendant as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

<u>COUNT V</u>
**Unjust Enrichment / Restitution**

175.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

176.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

177.    Plaintiffs and the Class conferred benefits on Defendant by purchasing the Amazon Subscriptions.

178.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the Class's purchases of the Amazon Subscriptions.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiffs and the Class to purchase the Amazon Subscriptions.  These omissions caused injuries to Plaintiffs and the Class because they would not have purchased the Amazon Subscriptions at all, or on the same terms, if the true facts were known.

179.    Because Defendant's retention of the non-gratuitous benefits conferred on them by

Plaintiffs and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class for their unjust enrichment, as ordered by the Court.

## COUNT VI
### Negligent Misrepresentation

180.    Plaintiffs hereby re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

181.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

182.    As discussed above, Defendant misrepresented in its advertisements and related statements made in connection with the sign-up and purchase processes for the Amazon Subscriptions that subscribers can "cancel any time."  Defendant omitted, failed to disclose, and intentionally concealed from such advertisements and related statements material facts concerning billing, shipping, cancellation, and automatic payment terms, policies, and requirements.

183.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

184.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Amazon Subscriptions and their associated terms.

185.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase and enroll in Defendant's Amazon Subscription programs.

186.    Plaintiffs and Class members would not have purchased the Amazon Subscriptions if the true facts had been known.

187.    The negligent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII
### Fraud

188.    Plaintiffs hereby re-allege and incorporate by reference the allegations contained in

all preceding paragraphs of this complaint.

189.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

190.    As discussed above, Defendant provided Plaintiffs and Class members with false or misleading material information and failed to disclose material facts about the Amazon Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies.  These misrepresentations and omissions were made by Defendant with knowledge of their falsehood.

191.    The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce, and actually induced, Plaintiffs and Class members to purchase the Amazon Subscriptions.

192.    The fraudulent actions of Defendant caused damage to Plaintiffs and the members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the Class, naming Plaintiffs as representatives of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

1

2   Dated: May 5, 2022                          Respectfully submitted,

3                                               **BURSOR & FISHER, P.A.**

4                                               By:  _____/s/ Neal J. Deckant_____
                                                         Neal J. Deckant
5

6                                               Neal J. Deckant (State Bar No. 322946)
                                                Julia K. Venditti (State Bar No. 332688)
7                                               1990 North California Boulevard, Suite 940
                                                Walnut Creek, CA  94596
8                                               Telephone:  (925) 300-4455
                                                Facsimile:  (925) 407-2700
9                                               Email: ndeckant@bursor.com
                                                         jvenditti@bursor.com
10                                              **BURSOR & FISHER, P.A.**
                                                Frederick J. Klorczyk III (State Bar. No. 320783)
11                                              888 Seventh Avenue
                                                New York, NY  10019
12                                              Telephone:  (646) 837-7150
                                                Facsimile:  (212) 989-9163
13                                              Email: fklorczyk@bursor.com

14                                              *Attorneys for Plaintiffs and the Putative Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Neal J. Deckant, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs Elena Nacarino, Susan Sylvester, and Michael Sonnenschein in this action.  Plaintiff Nacarino alleges that she resides in San Francisco, California; Plaintiff Sylvester alleges that she resides in Elk Grove, California; and Plaintiff Sonnenschein alleges that he resides in Los Angeles, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District, including Plaintiff Nacarino's alleged purchase of one of the Amazon Subscriptions at issue in this case.  Additionally, Defendant regularly does business in this District, and the same misrepresentations, omissions, and injures as alleged herein have occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California, this 5th day of May, 2022.

_/s/ Neal J. Deckant_
Neal J. Deckant

# EXHIBIT A

# BURSOR & FISHER

P.A.

1990 N. CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

NEAL J. DECKANT
Tel: 925.300.4455
Fax: 925.407.2700
ndeckant@bursor.com

September 8, 2021

**_Via Certified Mail – Return Receipt Requested_**

Amazon.com, Inc.
c/o Corporation Service Company
Attn: Legal Department - Legal Process
300 Deschutes Way SW, Suite 208 MC-CSC1
Tumwater, WA 98501

Re:     *Notice And Demand Letter Pursuant To California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Amazon.com, Inc., and its affiliates ("Amazon"), pursuant to the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1782(a), and any other state law cause of action requiring pre-suit notice, on behalf of our client, Elena Nacarino, and a class of all similarly situated persons in the State of California who were charged automatic renewal fees in connection with Amazon's paid subscription offerings (the "Class").

Ms. Nacarino alleges that Amazon has engaged in an illegal automatic renewal scheme with respect to its subscription plans for platform features and other products and services, including but not limited to memberships to Amazon Prime, Amazon Prime Video, Amazon Music, Amazon Music Unlimited, Amazon Subscription Boxes, Amazon Kids+ (formerly FreeTime Unlimited), Amazon Photos, Amazon Subscribe & Save, Kindle Unlimited, Audible Plus, and Audible Premium Plus (collectively, the "Amazon Subscriptions").  In the final webpage of Amazon's website at https://www. https://www.amazon.com/ and on its mobile application and/or set-top streaming devices (collectively, the "Amazon Platform") from which prospective subscribers are invited to complete their purchases (the "Checkout Page"), as well as in the confirmation email that Amazon subsequently sent to consumers after completing the checkout process (the "Acknowledgment Email"), Amazon intentionally made and disseminated statements concerning the Amazon Subscriptions to consumers in California and the general public, including our client and the putative Class, which are untrue and misleading on their face and by omission.  Amazon's untrue and misleading statements include but are not limited to representations and omissions regarding the terms of payment for and cancellation of a consumer's automatic payments associated with their Amazon Subscriptions.  Amazon's representations and omissions constitute false and deceptive advertisements.

The acts and practices of Amazon as described herein violated, and continue to violate, the CLRA in at least the following respects:

    a.      in violation of Section 1770(a)(5), Amazon has represented that the Amazon subscriptions have characteristics and benefits they do not have; and

    b.      in violation of Section 1770(a)(9), Amazon has advertised the Amazon Subscriptions with an intent not to sell them as advertised.

On behalf of our client and the Class, we hereby demand that Amazon immediately:  (1) cease, and desist from engaging in, the foregoing violations of the CLRA by fully and clearly disclosing any material terms associated with the Amazon Subscriptions (the "Terms") to consumers on the Checkout Page and in the Acknowledgment Email, in the manner required by statute; and (2) make full restitution to all California purchasers of any Amazon Subscription of all purchase and renewal money obtained from sales thereof.

We also demand that Amazon preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents that disclose any information listed below concerning renewal fees charged by Amazon with respect to the Amazon Subscription plans:

    a.    Net revenues generated from renewal fees;

    b.    The total number of people in California who paid renewal fees; and

    c.    The average amount of renewal fees paid.

2. All reports, memoranda, summaries, spreadsheets, databases or similar documents that track aggregate information regarding renewal fees paid by California purchasers of an Amazon Subscription plan.

3. All documents concerning the advertisement and marketing of the Amazon Subscription plans.

4. All documents and communications that discuss disclosure of the Terms by Amazon and authorized third-party retailers on the Amazon Platform:

    a.    Documents and communications discussing how the Terms should be disclosed;

    b.    Documents and communications discussing whether consumers see and understand disclosures about the Terms;

    c.    Documents and communications discussing whether to display the Terms more prominently, or less prominently; and

    d.  Documents and communications discussing any actual or potential changes to how the Terms are disclosed.

5.  Exemplar screenshots showing, at all relevant times, what information was shown to consumers when they purchased their Amazon Subscription plans from the Amazon Platform.

6.  All consumer surveys, research, or memoranda discussing the Terms or the disclosure of the Terms generally, and any email attaching or discussing such surveys, research, or memoranda.

7.  All documents and communications concerning the Amazon's decision to exclude any of the Terms from the Checkout Pages of the Amazon Platform.

8.  All documents, communications, consumer surveys, research, or memoranda discussing how to retain customers or prevent churn through the adoption of policies or practices related to cancellation and/or billing.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

This letter also serves as a thirty (30) day notice and demand requirement under Cal. Civ. Code § 1782 for damages.  Accordingly, should you fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, our client will seek actual and punitive damages against Amazon for violations of the CLRA on behalf of herself and the Class seeking monetary damages and equitable relief.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Sincerely,

Neal J. Deckant

# EXHIBIT B


**UNITED STATES**
**POSTAL SERVICE**

September 22, 2021

Dear Bursor and Fisher:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9414 8116 9900 0699 7175 95**.

| Item Details | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | September 13, 2021, 10:38 am |
| **Location:** | OLYMPIA, WA 98507 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Attn  Legal Department  Legal Process |

| Shipment Details | |
|---|---|
| **Weight:** | 1.0oz |

| Recipient Signature |
|---|

| | |
|---|---|
| Signature of Recipient: | X _Sam Jones_ <br> Printed Name: Sam Jones |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004